Charles J. ALLEN, Jr., and American Crankshaft Company, Plaintiffs,

v.

STANDARD CRANKSHAFT & HYDRAULIC COMPANY, Inc., Parts Warehouse, Inc., and Homer H. Brackett, Defendants.

Civ. No. 1607.

United States District Court
W. D. North Carolina,
Charlotte Division.

Heard June 16, 1964.

Decided July 2, 1964.

Channing L. Richards, Frank H. Kennedy, Clarence W. Walker, Charlotte, N. C., for plaintiffs.

William J. Waggoner, Paul L. Muilenburg, Charlotte, N. C., and Joseph Y. Houghton, Washington, D. C., for defendants.

CRAVEN, Chief Judge.

Having successfully prosecuted its action for trademark infringement and secured an injunction against the defendant's further use of "Arcwell", plaintiff now moves the court to proceed with a determination of damages for the trademark infringement previously adjudged, or that the court appoint a Special Master to conduct an accounting for determining the damages.

It has been determined that there was no appreciable confusion of goods.[1] The injunction was issued on the ground of likelihood existing of future confusion rather than proof of past confusion of goods. The market for reconditioned crankshafts has been a rather sophisticated one. Most customers of both companies are automotive jobbers or maintenance departments of large automotive fleets. Such customers know with whom they deal and rely upon the company rather than upon the mark. At the trial, there was no substantial evidence that

---

[1] The background of the controversy is set forth in the previous opinion. Plaintiff originally sued for patent and trademark infringement and unfair competition, and was successful only in establishing trademark infringement. Allen v. Standard Crankshaft & Hydraulic Co., 210 F.Supp. 844; aff'd. 323 F.2d 29 (4th Cir. 1963).

the defendants ever palmed off their goods as goods of the plaintiff. Virtually no one has ever asked for a crankshaft by the name "Arcwell" or "Arcplated". At the hearing on this motion, counsel for plaintiff, with commendable candor, concedes that he presently has little expectation of proving confusion of goods in more than a few instances. But, the plaintiff earnestly insists that an accounting should be ordered and an examination made of the records of defendant to see how many purchase orders might have been sent defendant specifying "Arcplated" (the plaintiff's mark) crankshafts. If it be assumed that some such purchase orders could be located, and it is extremely doubtful there would be more than a very few,[2] the inference urged by plaintiff would not necessarily follow. The peculiar nature of this market is such that the customers depended upon the manufacturer and were far more familiar with the identity of plaintiff and defendant than with the mark of either. If a purchase order were sent to defendant having on it plaintiff's mark, it is more likely that it was sent to the company for which it was intended and inadvertently specified the wrong trademark than vice versa.

■■ The burden is the infringer's to prove that his infringement had no cash value in sales made by him. Mishawaka R. & W. Manufacturing Co. v. S. S. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381, 1385 (1942). But, if it can be shown that the infringement had no relation to profits made by the defendant and that purchasers bought goods bearing the infringing mark because of defendant's recommendation or its reputation, or indeed for any reason other than a response to the diffused appeal of the plaintiff's symbol, the plaintiff, is, of course, not entitled to defendant's profits attributable to such factors. Here, as has been previously noted in the published opinion, *supra*, there is no showing of palming off of merchandise. Plaintiff's business was initially hurt by

the truthful representation to customers that plaintiff's key personnel had left the plaintiff to establish a new company and had the skill and know-how to recondition crankshafts. Defendants never represented that their shafts were those of the plaintiff, but simply that they were as good or better.

■ An accounting for profits is a form of equitable relief and it does not follow as a matter of course upon the mere showing of an infringement. Williamson-Dickie Manufacturing Co. v. Davis Manufacturing Co., 251 F.2d 924, 927 (3d Cir. 1958). Where there is no showing that the plaintiff's business has been hurt (by a trademark infringement) or that the defendant has made profit out of the infringement, there is no call for relief other than that given by injunction. Q-Tips, Inc. v. Johnson & Johnson, 206 F.2d 144, 149 (3d Cir. 1953). In Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947), the Supreme Court specifically approved the denial of an accounting in a case where the likelihood of damage to plaintiff or profit to infringer due to trademark misrepresentation seemed "slight". In the same opinion are collected numerous cases where an accounting had been denied and an injunction held sufficient to satisfy the equities of the case. Here, it seems extremely improbable that there would result any award of damages. Certainly it is most likely that if any damages were awarded they would amount to far less than the cost of taking such an accounting. Under these circumstances, it does not appear that the equities of the case require an accounting.

Moreover, the plaintiff is apparently barred by the doctrine of laches from recovering damages for the infringement of his trademark. Both plaintiff and defendant made application to the Patent Office for their respective marks at approximately the same time in 1951. Both parties filed the required five year affidavits to acquire incontestability. Never

2. Most orders were received by telephone.

**304**

was there an interference proceeding conducted in the Patent Office. The courts commonly distinguish between delay which is fatal to the cause of action and delay which is merely fatal to the recovery of damages. Menendez v. Holt, 128 U.S. 515, 9 S.Ct. 143, 32 L.Ed. 526, 529 (1888); San Francisco Association for the Blind v. Industrial Aid, 152 F.2d 532, 537 (8th Cir. 1946). As was said in McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828, 829 (1878): "Cases frequently arise where a court of equity will refuse the prayer of the complainant for an account of gains and profits, on the ground of delay in asserting his rights, even when the facts proved render it proper to grant an injunction to prevent future infringement." In Golden West Brewing Co. v. Milonas & Sons, 104 F.2d 880, (9th Cir. 1939), it was held that a delay of three years in bringing the suit for trademark infringement was sufficient to constitute laches warranting the denial of the accounting. Here, the delay was considerably longer.

Counsel may present an appropriate order in accordance with this memorandum opinion.