Walter L. SIEGERIST, Charles C. Litsch, and The Medart Engineering and Equipment Company, Appellants,

v.

BLAW–KNOX COMPANY, Appellee.

BLAW–KNOX COMPANY, Appellant,

v.

Walter L. SIEGERIST, Charles C. Litsch, and The Medart Engineering and Equipment Company, Appellees.

Nos. 19365, 19366.

United States Court of Appeals Eighth Circuit.

Aug. 4, 1969.

---

Edmund C. Rogers, of Kingsland, Rogers, Ezell, Eilers & Robbins, St. Louis, Mo. for Walter L. Siegerist et al., Estill E. Ezell and David F. Crossen, St. Louis, Mo., were on the briefs with Edmund C. Rogers, St. Louis, Mo.

Walter J. Blenko, Jr., of Blenko, Leonard & Buell, Pittsburgh, Pa., for Blaw-Knox Co.; Norris H. Allen, of Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, Mo., Edmund S. Ruffin, III, of Thorp, Reed & Armstrong, Pittsburgh, Pa., and James E. Anderson, Pittsburgh, Pa., were on the brief with Walter J. Blenko, Pittsburgh, Pa.

Before BLACKMUN, GIBSON and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Walter L. Siegerist, Charles C. Litsch and the Medart Engineering and Equipment Company (Meeco), defendants below, appeal from the entry of an injunction in the United States District Court for the Eastern District of Missouri which found that they had infringed upon appellee Blaw-Knox Company's right to the trademark "Medart" and had unfairly competed with Blaw-Knox. Blaw-Knox cross-appeals, asserting that it was entitled to an accounting. We refer to the parties by their status on the initial appeal, No. 19,365. We affirm, except with directions to modify the injunction in part.

The contested trademark "Medart" was originally the property of the Medart Company, a St. Louis-based corporation which had successfully engaged in manufacturing various industrial components including power transmission equipment and machinery for straightening metal bars and tubes.[1] In 1954, Medart Company was liquidated and the assets of its machinery division, which had manufactured power transmission equipment and bar and tube machinery, were transferred to the Emerman Machinery Company, together with all designs, drawings, specifications and customers' orders as well as inventions, patents, trade names and trademarks and the good will associated therewith. In conjunction with this transaction, Emerman immediately resold Medart's bar and tube machinery business to the Continental Foundry and Machine Company, together with all rights to the trademark and trade name "Medart". Continental, in turn, gave back to Emerman an assignable license to use the trademark "Medart" on power transmission equipment but reserved to itself all rights to use the trademark on bar and tube machinery. Included in Continental's purchase were the

"[d]esigns, drawings and specifications relating to the bar and tube equipment business, and all customer's orders, inquiries and correspondence or other documents or materials pertaining thereto * * * together

---

1. Federal registration for "Medart", as applied to bar and tube machinery and power transmission equipment, had been granted to the Medart Company in April, 1938.

with any filing cabinets used for the storage of such items."

Blaw-Knox's rights are derived through Continental, whose assets it purchased in 1955.

Appellant Walter L. Siegerist was a machinery manager for the Medart Company until it was liquidated. His father, Walter Siegerist, Sr., was the president of the Medart Company. In mid-August, 1954, the Siegerists and several other key employees of Medart Company became associated with Continental.

Appellant Charles Litsch was a shop foreman for Medart. He was employed by Emerman immediately following its purchase of the Medart Company and until November of 1954 as a caretaker for the Medart assets purchased by Emerman which had not been removed from the former Medart building. Litsch left Emerman's employ after certain Medart assets, consisting of factory and office equipment, were sold at public auction. In 1955, Litsch purchased from Emerman the former Medart power transmission business, including a license to use the trademark "Medart" upon power transmission equipment. The assignment to Litsch specifically recited the prior transfer to Continental of the trademark "Medart" as applied to bar and tube machinery "together with the good will connected with the use of and symbolized by said mark in the bar and tube equipment business acquired by Emerman from the Medart Company". Emerman's sale to Litsch occurred at about the same time as Blaw-Knox made its purchase from Continental, Emerman's successor in interest in the bar and tube machinery business.

In March of 1957, Litsch, Walter L. Siegerist and two other individuals organized the appellant corporation, the Medart Engineering and Equipment Company (Meeco), and the assets of Litsch's power transmission business were transferred to the new corporation. The new firm operated until 1962 from the building formerly occupied by the Medart Company. Prior to its incorporation, the Litsch business was confined to power transmission items. When Siegerist joined forces with Litsch, they broadened the scope of their operation to include the sale and repair of bar and tube machinery, both new and used.

The trial court found that, commencing with the incorporation of Meeco, the appellants had the deliberate purpose and intent of appropriating the trade name and trademark "Medart" for their benefit in developing a profitable bar and tube machinery business, well knowing that they had no right to do so. To this end, the appellants employed various stratagems and devices, including intentional use in the bar and tube business of the name "Medart" as a part of their corporate name, while knowing that such use would create confusion with the former Medart Company. This confusion was aggravated by the fact that Meeco operated its bar and tube business from the former Medart plant in St. Louis; by the publication and distribution of various advertising bulletins which were deceptively similar in format to those of the former Medart Company and included the false statement "Medart services since 1879"; and by the use of stationery in its bar and tube endeavors which was the same size and contained the same letter-type as that used by the former Medart Company, giving an appearance identical to that of stationery used by Medart, except for the different addresses and the substitution of the words "Engineering and Equipment Co." for the word "Company". The trial court found that the name difference was of no real significance since the name "Medart" was printed in very large letters on the Meeco stationery whereas a much smaller type was used for "Engineering and Equipment Co.". The impression conveyed to one who would even be aware of the difference was that the company was the same but it simply had changed its name. In addition, the appellants used advertising photographs of Medart machinery for the purpose of attempting to secure bar and tube machinery orders while mis-

leading prospective customers for bar and tube machinery as to the relationship of Meeco with the Medart Company. The trial court also found that inquiries and other correspondence relating to bar and tube machinery which were addressed to the Medart Company were opened and answered by Meeco as though the inquiry had been intended for Meeco. The appellants failed to disclose the fact that Meeco was an entirely new company, wholly different from the former Medart Company and in no manner a successor to its interest in bar and tube machinery. Replies tended to mislead the prospective customers into believing that Meeco was either the same company or its successor in interest as to bar and tube machinery.

Numerous drawings and tracings of bar and tube machinery manufactured and sold by the Medart Company, which the trial court found to be the property of appellee, came into the possession of Siegerist and Litsch and were used by them for their profit and benefit. These drawings enabled Meeco to make repairs and provide parts for bar and tube machinery and to make improvements in Medart bar and tube machinery. Siegerist attempted to justify his possession of the drawings on the ground that they were given to him for "safekeeping" by the Medart Company prior to its liquidation. The lower court found that this did not warrant Siegerist's making use of the drawings for personal or corporate benefit. In addition to the drawings already held by Siegerist, other drawings were obtained by Litsch, who was employed by Emerman for a short period after the 1954 liquidation as caretaker for the Medart's former assets. These drawings and other documents were given to Siegerist in 1962 after Meeco moved from the old Medart building.

The trial court found that Litsch knew that these drawings were the property of Blaw-Knox and that, until the time of trial, Blaw-Knox did not know for a fact that the appellants had these documents.

The appellants, without the knowledge of Blaw-Knox, unlawfully acquired possession and made use of a list of names of former customers of Medart Company, which list contained information concerning serial numbers, dates of sale and the type of Medart machines sold to these customers. The trial court found that list to be "invaluable", particularly for the purpose of correlating such information with the drawings already held by Siegerist.

On April 1, 1968, the trial court entered an order prohibiting the appellants from using the trademark "Medart" or any colorable imitation thereof in connection with its bar and tube machinery business and from representing to prospective buyers of bar and tube machinery that there is any connection between the Meeco bar and tube machinery business and the Medart bar and tube business. The order enjoined the appellants from making use of the drawings, customers' lists and photographs held by Siegerist or Meeco in conjunction with their bar and tube business and directed that they should deliver to the Clerk of the District Court for destruction:

"all drawings, prints, photographs, patterns, specifications, tracings, and customer lists, and any copy thereof, in their possession, including any such objects and documents which have been filed as exhibits in this cause, related to or which may have been used in connection with the bar and tube machinery business of The Medart Company."

The appellants now contest the trial court's findings and the propriety of its order. Specifically, they contend that Blaw-Knox does not have the sole right to use the trademark "Medart", as applied to bar and tube machinery, since Blaw-Knox has not proven significant use of the trademark in the bar and tube machinery business after its acquisition from Continental. They claim that in any event, Blaw-Knox is barred by laches because of failure to timely assert its claim, and barred by estoppel because of Blaw-Knox's acquiescence in

their activities of which it was aware since 1957. They also contend that the trial court lacked jurisdiction over the claim for the blueprints and other such documents. Even if federal jurisdiction could be established, the appellants contend that the trial court was still in error since Blaw-Knox failed to prove its title to the drawings and its claim, if any, is barred by laches and the Missouri statute of limitations. Blaw-Knox has cross-appealed contending that it should properly have been given an accounting for the trademark infringement and unfair competition by appellants.

We note that the trial court's holding does not prevent appellants from competing with Blaw-Knox in bar and tube machinery or, indeed, in the repair of old Medart machines. It does interdict appellants' usurpation of the trademark and good will of the former Medart Company with respect to such business.

The trial court found that the trademark "Medart" as applied to bar and tube machinery was properly transferred through various intermediaries to Blaw-Knox, together with the good will associated therewith. The question now presented by appellants is whether Blaw-Knox's failure to establish any significant use of the trademark in the bar and tube machinery business before 1959 constituted an abandonment of the trademark and prevents Blaw-Knox from contesting the appellants' use of said trademark which, appellants claim, commenced in 1957. Appellants note that Blaw-Knox's trademark registration was allowed to lapse in 1958 and was not renewed until 1963, approximately two months before the commencement of this action.

■■ At the outset, we note that it is clear upon the record that if the trademark "Medart", as used in the bar and tube machinery business, is the property of Blaw-Knox, it has been infringed upon by the appellants' activities. The trademark "Medart" is concededly a valuable asset and has long been given a distinctive meaning in the marketplace because of its use by the former Medart Company. Meeco's use of advertisements deceptively similar to those employed by the former Medart Company, its use of stationery with the title Medart emphasized in the same print as that used by the former Medart Company and its representations, explicit and implicit, that it was the successor in interest to Medart's bar and tube business, indicate a deliberate infringement upon the trademark "Medart", as applied to the bar and tube machinery, and misappropriation of the good will associated therewith. The evidence indicates that bar and tube machinery customers were actually confused as to the relationship of Meeco with the former Medart Company because of Meeco's use of the trademark "Medart". Such confusion is more than sufficient to support the finding that the trademark had been infringed. See, Sweetarts v. Sunline, Inc., 380 F.2d 923 (8th Cir. 1967); David Sherman Corp. v. Heublein, Inc., 340 F.2d 377 (8th Cir. 1965); Neely v. Boland Mfg. Co., 274 F.2d 195, 203 (8th Cir. 1960).

■ Nor do we feel that appellants can successfully defend their activities on the ground that Blaw-Knox had abandoned its right to the trademark. Appellants rely on 15 U.S.C. § 1127, which states in part:

"A mark shall be deemed to be 'abandoned'—

(a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment."

Appellants claim that from 1955, when Blaw-Knox acquired its right to the trademark "Medart", until 1959 Blaw-Knox did not make use of the trademark "Medart" for bar and tube machinery. They claim that this inactivity, together with Blaw-Knox's allowing its federal registration to lapse in 1958, indicates an intent to abandon the trademark.

The trial court found that the trademark had not been abandoned and that Blaw-Knox was entitled to its exclusive use for bar and tube machinery. The purchase of the trademark and heavy machinery facilities from Continental; the development of specialized bar and tube machines during the period in question for Bliss-Laughlin Company by Blaw-Knox; evidence that years may elapse between customer contact, order and manufacture of bar and tube machines and evidence that Meeco had, prior to any litigation, acknowledged Blaw-Knox's right to exclusive use of "Medart" in the bar and tube business were circumstances for the trial court's consideration on the issue of abandonment. We are unable to find that the trial court's holding in this matter is clearly erroneous.

■ The appellants claim that Blaw-Knox is barred by laches from asserting its claim to the trademark. The trial court found that Blaw-Knox notified appellants of its objection to their misappropriation of the Medart trademark as soon as it became known to them that Meeco was engaging in the bar and tube machinery business. Although Meeco's activities in the bar and tube field commenced in 1957, Blaw-Knox apparently was not fully aware of the extent of the misappropriation until shortly before this suit was commenced in 1963. Although there was some delay in the filing of this action, we concur in the trial court's observation that such delay was proper since the parties attempted to engage in conciliatory negotiations rather than rush headlong toward litigation.

■■ The trial court also found that the appellants had unfairly competed with Blaw-Knox by their misappropriation and misuse of drawings, customer lists and other documents which were formerly the property of the Medart Company. In addition to questioning the propriety of this order, the appellants urge that the trial court lacked jurisdiction over the matter. While diversity is not contested, it is argued that the unfair competition claim as to the misuse of the drawings does not exceed in value the minimum jurisdictional amount. In accord with the trial court, we find it unnecessary to place separate valuations on each of Blaw-Knox's claims. The trademark infringement claim and unfair competition claim were pressed against the defendants-appellants jointly and the aggregate value of these claims is the proper measure for determining jurisdiction under 28 U.S.C. § 1332(a). 1 Moore's Federal Practice, ¶0.97[2] (2d ed. 1964); cf., Snyder v. Harris, 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Considering Blaw-Knox's past and potential profits from Medart's bar and tube machinery business which were lost or jeopardized by the appellants' unlawful activities, the trial court ruling that the amount in controversy in this suit substantially exceeds $10,000 is not clearly erroneous. As stated by Judge Mehaffy in Hulsenbusch v. Davidson Rubber Co., 344 F.2d 730, 733 (8th Cir. 1965), cert. denied, 382 U.S. 977, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966):

> "In an equitable action for an injunction against irreparable injury, the amount in controversy is determined by the value of the property right sought to be protected against the alleged interference. * * * While such a right is not susceptible of exact evaluation, the weight of authority in trademark-tradename and unfair competition suits generally permits evidence of potential, as well as past, damages in arriving at the dollar value of the subject matter of the lawsuit."

We do not reach the issue of whether jurisdiction may be founded on 28 U.S.C. § 1338(b).

The evidence indicates that the contested drawings, blueprints and customer lists found to be misappropriated by the appellants came from three different sources. The trial court found that the first group, loosely referred to as "red

tube" drawings,[2] were entrusted to Walter Siegerist for "safekeeping" by the former Medart Company when Siegerist was an employee of Medart. Another group of Medart documents, so-called "residue" documents, were retrieved by Litsch from the Medart building after the Medart Company was liquidated in 1954. Litsch was then employed by Emerman as a caretaker of Medart assets left in the old building. Still another group of drawings and documents were entrusted to the appellants by customers of Meeco, while the appellants were in the bar and tube machinery business and subsequent to Siegerist's and Litsch's severing relations with old Medart and any of Blaw-Knox predecessors in interest. The trial court found that the "red tube" and "residue" drawings were misappropriated by Siegerist and Litsch and used by all the appellants to unfairly compete with Blaw-Knox. Since the drawings were so "commingled" as to render impossible identification as to source, the trial court, upon appellee's request, ordered all of the above documents, including those entrusted to Meeco by its customers, surrendered to the District Court Clerk and by him to be destroyed.

■ We hold that the trial court's finding that appellants unfairly competed with Blaw-Knox in their use of the "red tube" and "residue" drawings is not clearly erroneous and must be sustained. These documents, the trial court found, were included in the assets sold in all of the transactions which ultimately resulted in Blaw-Knox's present ownership of Medart bar and tube machinery business. Siegerist and Litsch each occupied a fiduciary relationship to former owners of the documents, Siegerist to old Medart and Litsch to Emer-

man. These relationships of trust could in no way result in either Siegerist or Litsch obtaining title to the documents upon Medart's sale of assets to Emerman or Emerman's sale of bar and tube assets to Continental. Consequently, the use of these documents, which are clearly the property of Blaw-Knox, to directly compete with Blaw-Knox in the bar and tube machinery business constitutes unfair competition. See, National Rejectors, Inc. v. Trieman, 409 S.W.2d 1, 29–45 (Mo.1966); Midland-Ross Corp. v. Yokana, 185 F.Supp. 594, 604 (D.N.J. 1960), aff'd, 293 F.2d 411 (3d Cir.1961).

■ The trial court ordered destruction of other documents which Meeco obtained from its customers and observed that "a relative few are said to be the property of customers, but even as to these we find defendants have no right to make use of them except for the purpose of filling the particular customer's orders". There is no finding that these documents are the property of Blaw-Knox, nor did Blaw-Knox so claim. There is no finding that these drawings contain misappropriated trade secrets of Blaw-Knox, nor is there any claim based on misappropriation of trade secrets. We are unable to find any substantiation for the finding that the retention and use of these documents by the appellants constitutes unfair competition. Accordingly, an order for destruction of these documents cannot be sustained, except for the difficulty in separating those documents that appellants are entitled to keep from those to which they have no right. See, E. W. Bliss Co. v. Struthers-Dunn, Inc., 408 F.2d 1108 (8th Cir. 1969) and cases cited therein. Appellants themselves have made it difficult, perhaps impossible, to remedy their misappropriation and misuse of documents

---

2. Some of the particular drawings in the red tubes may have come from customers of Meeco as evidenced by the following excerpt from Walter Siegerist's testimony:

"Q. Mr. Siegerist, a number of drawings which are in the fifty-nine red tubes —there are too many, really—have black patches on them. Can you tell us

who put those patches on? A. Mr. Ezell and myself, sir.
Q. And why? A. They were customers' drawings.
Q. Customers' drawings? A. Sent to us; yes, sir.
Q. What is covered by the black patches? A. Customers' names, sir."
(App. p. 313)

without destruction of all these documents. The trial court, recognizing a dilemma, attempted a solution by staying destruction to allow appellants' customers to claim certain drawings. Such order requires action by one not a party to this action. Rather, the matter should be determined from evidence submitted by the parties. We feel that the order relating to destruction of documents should alternatively permit appellants to submit additional evidence for consideration by the trial court as a basis for segregation and return of drawings which appellants had received from Meeco's customers.

 The unfair competition claim is not barred by laches nor by the Missouri five-year statute of limitations, Mo.Stat.Ann. § 516.120 (1949). Assuming, *arguendo*, that the Missouri statute is applicable, the record indicates that the appellants used the misappropriated documents in an attempt to unfairly compete with Blaw-Knox within the five-year period ending with the filing date of this action. This is not an action for breach of contract nor for replevin of the documents. Consequently, appellants' contention that the statute of limitations began to run when the documents were originally misappropriated is without merit. Similarly, the unfair competition claim is not barred by the equitable doctrine of laches. The full extent of appellants' activities was not known by Blaw-Knox until shortly before the commencement of this lawsuit. Indeed, the trial court found that Blaw-Knox did not receive "substantial information" as to the appellants' possession of and use of these documents until after the commencement of this lawsuit.

On this record, the trial court did not abuse its discretion in denying Blaw-Knox a further remedy by way of an accounting. There was little evidence to indicate that plaintiff had sustained any substantial amount of damages. Testimony indicated that, while some potential customers may have been confused by the improper use of "Medart", no great diversion of business occurred. Some confusion in trade names was likely in any event since both sides were entitled to the use of "Medart" though in connection with different products. Equitable principles do not require an accounting as a matter of law in this case. See, Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 130, 67 S. Ct. 1136, 91 L.Ed. 1386 (1947); Allen v. Standard Crankshaft & Hydraulic Co., 231 F.Supp. 301, 303 (W.D.N.C.1964), aff'd, 323 F.2d 29 (4th Cir.1963); G. D. Searle & Co. v. Chas. Pfizer & Co., 265 F.2d 385 (7th Cir.1959), cert. denied, 361 U.S. 819, 80 S.Ct. 64, 4 L.Ed.2d 65 (1959); cf., Fuller Products Co. v. Fuller Brush Co., 299 F.2d 772 (7th Cir. 1962), cert. denied, 370 U.S. 923, 82 S. Ct. 1565, 8 L.Ed.2d 503 (1962). On the cross-appeal, we affirm the trial court's action denying an accounting.

Affirmed with instructions to modify the injunction in part, consistent with this opinion.