Carol L. Kirchner GAFFORD, Plaintiff–Appellant,

v.

GENERAL ELECTRIC COMPANY, Defendant–Appellee.

No. 91–6482.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 9, 1992.

Decided June 18, 1993.

Edwin F. Kagin (argued and briefed), Covington, KY, for plaintiff-appellant.

Edwin S. Hopson (argued and briefed), Holly Thacker, Wyatt, Tarrant & Combs, Earl F. Jones, General Elec. Co., Louisville, KY, for defendant-appellee.

Before: JONES and RYAN, Circuit Judges; and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff–Appellant Carol L. Kirchner Gafford appeals the unfavorable disposition of her sex discrimination suit on a veritable plethora of multifarious grounds. We find no merit in Gafford's contentions and thus affirm.

**I**

Gafford graduated from high school in 1951. In November 1952, she began working for the General Electric Company ("GE") in Louisville, Kentucky, as a general clerk in its maintenance office. In the years that followed, she worked in various GE offices at various secretarial/receptionist jobs. She left GE on two different occasions, once from February 1958 to May 1959, and once from August 1969 to March 1971. While employed at GE, she took courses in advanced typing, shorthand, and English.

In April 1973, she began working for GE's Meetings and Conventions Operation as a "Grade 8" Secretary to Hal Kendle, Manager of the Meetings and Conventions Operation. Through time, her responsibilities increased. Her compensation and title increased accordingly. In September 1973, she was raised to a "Grade 9" Clerk; in November 1979, she became a "Grade 11" Coordinator.

In December 1985, Kendle retired. Upon his retirement, Tom Elgar, Manager of Sales Support and Administration, took over from Bill Clark, Manager of Sales, Training and Development, the responsibility for overall supervision of the Meetings and Conventions Operation. Clark had been Kendle's immediate supervisor. Kendle's position was not filled immediately. On December 1, 1986, responsibility for the Meetings and Conventions Operation was split between Clark, who resumed authority over certain aspects of the Meetings and Conventions Operation, and Elgar. Gafford asserts that, after Kendle's retirement, she assumed Kendle's duties and responsibilities, but not his title and salary.

In addition to this allegedly discriminatory act, Gafford was allegedly discriminatorily passed over for the job of Meeting Planner in the Meetings and Conventions Operation. In October 1986, a Meeting Planner died unexpectedly. Gafford filled out self-nomination papers for the position. She anticipated that the job vacancy might be posted while she was on vacation, so she gave the papers to a friend to submit upon posting. When she returned from her vacation, she was told that the job had not been posted. The job had, however, been given to Joe Schoettmer.

Gafford claims that Schoettmer was a "misfit and an underachiever." Gafford's Br. at 3. GE's description of Schoettmer is a bit more generous. Schoettmer had been employed by GE since 1951. During that time, he had acquired extensive hands-on experience as a meeting planner, and had received excellent performance ratings for relevant work experience. In October 1986, he was looking to transfer within the organization due to a change in the focus of his job description. Clark caught wind of this, and Schoettmer got the Meeting Planner job without any posting of a job vacancy. All those who played a role in the Schoettmer transfer claimed that they had not known Gafford was interested in the job.

Gafford's physical health and emotional well-being allegedly deteriorated as a result of being allegedly discriminatorily passed over for the Manager and Meeting Planner positions. She made no application for any other position at GE. She applied for early retirement in July 1988, indicating that she preferred to retire effective November 1, 1988.

In October 1988, GE decided to hire a new Manager of the Meetings and Conventions Operation. They chose Bill Fochtman, a GE employee with thirty years of experience, who was losing his former position due to corporate reorganization. In his various previous positions with GE, Fochtman had accumulated about sixteen years of actual meeting planning experience. At Fochtman's request, Gafford stayed on through December 16, 1988.

## II

On September 27, 1989, Gafford sued GE in the Jefferson Circuit Court of the Commonwealth of Kentucky. Her claims arose under Kentucky's civil rights statute, specifically Kentucky Revised Statutes Annotated § 344.040 (Baldwin 1986). Her basic contention was that she did not get the Manager position or the Meeting Planner position because of her gender. She sought an unspecified amount of damages to compensate her for lost wages and retirement benefits, for mental and emotional anxiety and stress, and for court costs and attorney fees.

On October 18, 1989, GE filed a petition for removal in the United States District Court for the Western District of Kentucky based on diversity of citizenship. Gafford filed a response on October 24, 1989, and moved to remand the case due to lack of diversity and because GE did not post a removal bond. Gafford's motion to remand was denied in a memorandum opinion and order entered on January 17, 1990.

Gafford subsequently amended her complaint to allege claims of wrongful discharge, constructive discharge, and intentional infliction of emotional distress. On September 2, 1991, the district court granted partial summary judgment in favor of GE on the three new claims brought forth in Gafford's amended complaint. Gafford then moved to amend her amended complaint. This motion was denied on September 24, 1991.

Shortly before trial, Gafford filed two more motions to remand, challenging the existence

of complete diversity and also arguing that the amount in controversy did not exceed $50,000. After a hearing, the district court concluded that it had jurisdiction to hear the case.

A jury trial began on September 26, 1991. When Gafford rested her case, the district court dismissed her sex discrimination claim regarding the Manager position. The issue of whether GE discriminated against Gafford on account of her gender in transferring Schoettmer to fill the Meeting Planner position was eventually submitted to the jury. The jury returned a verdict in favor of GE.

Gafford filed a motion for a new trial which was denied on November 27, 1991. She timely appealed.

### III

#### A

■■■■ Gafford first contests subject matter jurisdiction. The existence of subject matter jurisdiction generally is a question of law, subject to de novo review. *Greater Detroit Resource Recovery Auth. v. United States Envtl. Protection Agency,* 916 F.2d 317, 319 (6th Cir.1990); *see also Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We review a district court's factual determinations regarding jurisdictional issues for clear error. *See Kruso,* 872 F.2d at 1421; *Blakemore v. Missouri Pac. R.R.,* 789 F.2d 616, 618 (8th Cir.1986); *see also Texas Acorn v. Texas Area 5 Health Sys. Agency, Inc.,* 559 F.2d 1019, 1024 (5th Cir.1977);

*Siegerist v. Blaw–Knox Co.,* 414 F.2d 375, 381 (8th Cir.1969); *cf. Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

■■■■ In removing this case, GE asserted federal subject matter jurisdiction on the basis of diversity of citizenship and satisfaction of the amount-in-controversy requirement. Generally, a civil case brought in state court may be removed by a defendant to federal court if it could have been brought there originally. 28 U.S.C. § 1441(a) (1988). A federal district court has original jurisdiction over, *inter alia,* any civil action "where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—(1) citizens of different States." 28 U.S.C. § 1332(a) (1988). A defendant desiring to remove a case has the burden of proving the diversity jurisdiction requirements. *See Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit,* 874 F.2d 332, 339 (6th Cir.1989); *Cole v. Great Atl. & Pac. Tea Co.,* 728 F.Supp. 1305, 1307 (E.D.Ky.1990); *see also Yeldell v. Tutt,* 913 F.2d 533, 537 (8th Cir. 1990). Gafford contends that GE did not meet its burden of proving satisfaction of the amount-in-controversy requirement because it did not prove to a legal certainty[1] that the amount in controversy met the federal requirement. Whether this or some other burden of proof is to be applied in situations such as this is a subject of much controversy.[2]

---

1. At oral argument, counsel for Gafford alternatively phrased the burden, "by clear and convincing evidence." Tape of Oral Argument on *Gafford v. General Electric Co.,* No. 91–6482 (Nov. 9, 1992) (available through the Office of the Clerk, United States Court of Appeals for the Sixth Circuit) [hereinafter Tape of Oral Argument (Nov. 9, 1992)].

2. Judge Ryan, concurring separately in this case, does not think it necessary to address the burden of proof issue with respect to the amount-in-controversy requirement because Gafford's counsel, in Judge's Ryan's view, conceded that the amount-in-controversy requirement was met. This concession was allegedly made at the jurisdictional hearing and at oral argument.

At the jurisdictional hearing, the following colloquy took place:

> THE COURT: And what is the amount in controversy?
>
> MR. KRAUS [counsel for Gafford]: Judge, I haven't calculated it at this point in time, but I think what the number is, the differences between the twenty-seven that Mrs. Gafford made as a maximum, and the fifty-six, if, if in fact we're looking at almost thirty difference in that point in time. And I can see where a jury might find at least two years, it looks like the amount in controversy, since GE has provided us with that figure.

J.A. at 247. Since the defendant has the burden of proving the jurisdictional requirements, a statement that recovery *might* exceed the juris-

## B

### 1

The starting point for resolving the controversy is *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In that case, the Supreme Court considered whether a removed case could be remanded where the damages alleged in the original state court complaint were greater than the amount-in-controversy requirement for federal jurisdiction, but where the post-removal amended complaint listed a schedule of damages totalling less than the amount-in-controversy requirement and the damages awarded after a bench trial were also less than the amount-in-controversy requirement. The Court wrote:

The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. The rule governing dismissal for want of jurisdiction *in cases brought in the federal court* is that, unless the law gives a different rule, *the sum claimed by the*

dictional amount does not constitute a concession that the amount-in-controversy requirement is met unless the defendant need only show such a *possibility*. Gafford contends, however, that the defendant's burden is greater than this, and, as discussed *infra*, we agree that the defendant is to be held to a higher burden than showing a mere possibility that the jurisdictional amount is satisfied. Thus, we do not take Gafford's counsel's statement at the jurisdiction hearing to be a material concession.

Nor do we find that counsel for Gafford made such a material concession at oral argument. The following comments and discussion are relevant to our finding:

> [Counsel for Gafford]: We argue further that [the district court] should have [remanded this case] because the diversity requirements to bring the case, kicking and screaming, from the Kentucky state court where it was filed into federal court were blatantly violated.
>
> . . . .
>
> [GE's] petition for removal is defective on its face. It doesn't show the $50,000 controversy required. . . .
>
> [Judge Jones]: Did [the trial counsel] not virtually concede in response to a question from the court that the recovery could conceivably exceed the $50,000 jurisdictional amount?
>
> [Counsel for Gafford]: I believe he did do that, your honor, but he can't be held to that because the burden is at all times on the defendant to establish by clear and convincing evidence the jurisdictional amount of the court,

*plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty . that the claim is really for less than the jurisdictional amount to justify dismissal.* The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore *colorable for the purpose of conferring jurisdiction,* the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

What already has been said, and circumstances later to be discussed, lead to the

and the jurisdictional issue is forever there and is never waived.

> Now, counsel was in a problem. In Kentucky, you don't plead jurisdictional amount; it's against the rules. He pled an amount adequate to compensate the defendant [sic]. The judge relied on conclusory statements by counsel for the defendant and by the court doing its own arithmetic to determine what appeared to the court to be obvious—but that is not the standard. That's how the court can send this case back to the . . . admittedly very fine district court judge for a remand and a full trial
>
> . . . .

Tape of Oral Argument (Nov. 9, 1992). On rebuttal, counsel for Gafford remarked:

> Opposing counsel makes much of admissions by plaintiff's counsel as to jurisdictional amount. The case law is overwhelmingly clear that the burden is always upon the defendant. They raised the jurisdictional amount from 10,-000 to 50,000 to try to keep . . . cases out of the federal courts.

*Id.* Again, we find that Gafford's counsel did not concede that ‛the amount-in-controversy requirement was met by GE satisfying its burden of proof on this score. Given that no such concession was made, and that Gafford has properly placed this issue in controversy, we proceed to analyze the defendant's burden of proof with respect to the amount-in-controversy requirement and whether GE has met this burden in this case.

conclusion that a dismissal would not have been justified *had the suit been brought in the federal court.* The principles which govern *remand of a removed cause,* more urgently require that it should not have been remanded. In a cause instituted in the federal court the plaintiff chooses his forum. He knows or should know whether his claim is within the statutory requirement as to amount. His good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit. Indeed, this is the court's duty under the [Judiciary] Act of 1875. In such original actions it may also well be that plaintiff and defendant have colluded to confer jurisdiction by the method of the one claiming a fictitious amount and the other failing to deny the veracity of the averment of amount in controversy. Upon disclosure of that state of facts the court should dismiss.

*A different situation is presented in the case of a suit instituted in a state court and thence removed. There is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end. For if such were the purpose suit would not have been instituted in the first instance in the state but in the federal court.*

*Id.* at 288–91, 58 S.Ct. at 590–91 (emphasis added; footnotes omitted). From this discussion, it is evident that, if a plaintiff brings an action in federal court and a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith. *See Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961); *Wood v. Stark Tri–County Bldg. Trades Council,* 473 F.2d 272,

273 (6th Cir.1973). Plaintiff's assertion of the amount in controversy is presumed to have been made in bad faith if it appears, to a legal certainty, that the original claim was really for less than the amount-in-controversy requirement. *See* 14A Charles A. Wright et al., *Federal Practice and Procedure* § 3702, at 54–56 (2d ed. 1985) [hereinafter *Federal Practice* ]. This rule comports well with the well-pleaded complaint rule, namely, that the plaintiff is "the master of the claim." *Smolarek v. Chrysler Corp.,* 879 F.2d 1326, 1329 (6th Cir.) (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989).

■ Also from the quoted discussion in *St. Paul,* it is equally evident that the "legal certainty" standard should apply to cases removed to federal court from state court where the plaintiff's prayer for damages in the state suit exceeds the federal amount-in-controversy requirement. To this point in our discussion, courts are in general agreement.

Opinions regarding the defendant's burden of proof begin to diverge where a defendant seeks to remove a case where the plaintiff has specifically claimed *less* than the federal amount-in-controversy requirement. Generally, since the plaintiff is master of the claim, a claim specifically less than the federal requirement should preclude removal. *See St. Paul,* 303 U.S. at 294, 58 S.Ct. at 592 ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."); *see also* 14A *Federal Practice* § 3725, at 418–19 ("[A] plaintiff who has a claim for more than the jurisdictional amount may waive proof of it and bring a nonremovable action in a state court for less than the statutory minimum and thereby prevent removal.") (citing cases). But state counterparts to Rule 54(c) of the Federal Rules of Civil Procedure,[3] might enable a plaintiff to

---

**3.** This provision provides:

**(c) Demand for Judgment.** A judgment by default shall not be different in kind from or exceed in amount that prayed for in the de-

mand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is ren-

claim in his or her complaint an amount lower than the federal amount-in-controversy requirement in an attempt to defeat federal jurisdiction, while actually seeking and perhaps obtaining damages far in excess of the federal requirement. Thus, courts have considered allowing removal where the defendant establishes a "substantial likelihood" or "reasonable probability" that the plaintiff intends to seek damages in excess of the federal amount-in-controversy requirement. *See, e.g., Vail v. Orkin Exterminating Co.,* No. 91 C 3053, 1991 WL 134275, at *2, 1991 U.S.Dist. LEXIS 9633, at *6 (N.D.Ill. July 12, 1991) (employing the "substantial likelihood" test in a case where plaintiff's complaint included an *ad damnum* clause limiting damages to an amount below the federal requirement); *Cole v. Freightliner Corp.,* No. 91 C 733, 1991 WL 42163, at *2, 1991 U.S.Dist. LEXIS 3408, at *3–*4 (N.D.Ill. Mar. 21, 1991) (using the "reasonable probability" test in a case where plaintiff's complaint specifically prayed for damages less than the federal requirement). *See generally* 14A *Federal Practice* § 3725, at 424–27.

Given the slightly different removal case circumstance where the plaintiff seeks to recover some *unspecified* amount that is not self-evidently greater or less than the federal amount-in-controversy requirement, opinions also diverge. *See, e.g., Saunders v. Rider,* 805 F.Supp. 17, 18 (E.D.La.1992) ("[T]he appropriate test for determining threshold jurisdictional amount when the complaining papers seek no specific award is still unclear."). A survey of the case law reveals at least three different burdens of proof to be placed upon the defendant in such a circumstance: (1) the defendant must prove, to a legal certainty, that the plaintiff's claims are not less than the federal amount-in-controversy requirement, *id.* at 18; *Atkins v. Harcros Chems., Inc.,* 761 F.Supp. 444, 446 (E.D.La. 1991); *Kennedy v. Commercial Carriers, Inc.,* 739 F.Supp. 406, 410 (N.D.Ill.1990); *Melkus v. Allstate Ins. Co.,* 503 F.Supp. 842, 845 (E.D.Mich.1980); (2) the defendant must prove, "more likely than not," that the plaintiff's claims meet the federal amount-in-controversy requirement, *Garza v. Bettcher Indus., Inc.,* 752 F.Supp. 753, 763–64 (E.D.Mich.1990); *Beeching v. Showboat Hotel, Casino, Country Club & Bowling Ctr.,* No. 1:91–CV–127, 1991 WL 526303, at *2, 1991 U.S.Dist. LEXIS 4165, at *6 (W.D.Mich. Apr. 1, 1991); *see also Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992) (seeming to apply this standard); and (3) the defendant must show that there is "a probability" or "some reasonable probability" that the amount in controversy exceeds the federal amount-in-controversy requirement, or that the amount in controversy "may" or "could" exceed the requirement (i.e., it does not appear to a legal certainty that the plaintiff's claims are for less than that amount), *Partlow v. Jones Motor Co.,* 736 F.Supp. 744, 745–46 & n. 2 (E.D.Mich.1990) (using the "may" test); *Urban v. Chrysler Motors Corp.,* No. 92 C 1678, 1992 WL 132853, at *3, 1992 U.S.Dist. LEXIS 7471, at *12 (N.D.Ill. May 29, 1992) (using the "some reasonable probability" test); *see Pakledinaz v. Consolidated Rail Corp.,* 737 F.Supp. 47, 48 (E.D.Mich.1990) (using the "could" test but not explicitly placing the burden of proof upon the defendant); *Kennard v. Harris Corp.,* 728 F.Supp. 453, 454–55 (E.D.Mich. 1989) (using the "a probability" test but not explicitly placing the burden of proof upon the defendant); *cf. Johnson v. Core–Vent Corp.,* No. 90 C 613, 1990 WL 51253, at *2–*5, 1990 U.S.Dist. LEXIS 4225, at *4–*13 (N.D.Ill. Apr. 12, 1990) (seeming to accept the validity of the "a probability" test, but proceeding to apply what might be construed as a different "reasonably likely" test).

■ We conclude that the "preponderance of the evidence" ("more likely than not") test is the best alternative. We believe that this test best balances the competing interests of protecting a defendant's right to remove and limiting diversity jurisdiction.

The principal policy behind a defendant's statutorily created right to remove is protection from local bias. As one commentary has described:

As seems to be true of the diversity jurisdiction of the federal courts, the right of removal probably was designed to pro-

dered is entitled, even if the party has not

demanded such relief in the party's pleadings.

tect nonresidents from the local prejudices of state courts. The rather limited right to remove given in 1789 to aliens and nonresident defendants was expanded by a series of statutes, a great many of which were enacted in the aftermath of the Civil War. These culminated in 1875 in legislation that permitted removal, subject only to the then-required jurisdictional amount of $500, of virtually all cases within the constitutional judicial power of the federal courts. This privilege was narrowed in 1887 by a statute that raised the jurisdictional amount to $2000, limited the right of removal to defendants, and was construed as barring removal when defendant relied on federal law as a defense. The present removal statute, Section 1441 of the Judicial Code, is closely patterned after the 1887 enactment.

14A *Federal Practice* § 3721, at 187–88 (footnotes omitted).

Though the defendant's right to a forum free from bias is to be valued, so too is the limited nature of federal jurisdiction. As the above commentary indicates, one means by which Congress has sought to limit access to federal courts in diversity cases is the amount-in-controversy requirement. The following excerpt from the legislative history of the 1988 amendment to 28 U.S.C. § 1332(a) which raised the amount-in-controversy requirement from $10,000 to $50,000, *see* Judicial Improvements and Access to Justice Act, Pub.L. 100–702, § 201(a), 102 Stat. 4642, 4646 (1988), is also instructive:

### SUBTITLE B. DIVERSITY REFORM

### BACKGROUND

The provisions of the subtitle make amendments to reduce the basis for Federal court jurisdiction based solely on diversity of citizenship. . . .

. . . .

. . . The Subcommittee on Courts, Civil Liberties, and the Administration of Justice adopted an amendment to generally abolish diversity of citizenship. The resolution of this debate by the Committee was to vote to increase the amount in controversy for diversity jurisdiction from $10,-000 to $50,000.

### SECTION–BY–SECTION ANALYSIS

*Section 311*

Section 311 amends 28 U.S.C. 1332 to provide for an increase in the amount in controversy required for Federal diversity of citizenship cases from $10,000 to $50,-000. This change is supported by the Judicial Conference of the United States.

The increase is justifiable on at least two grounds. First, a potential reduction of caseload. The last time the amount in controversy was revised was in 1958. That upward revision produced at least a short term reduction in the number of diversity cases. . . .

The increase in the amount in controversy to $50,000 should reduce the Federal diversity caseload by up to 40%, according to the proponents of reform.

H.R.Rep. No. 889, 100th Cong., 2d Sess. 44–45 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6005–06 (footnote omitted).

Thus, by statute, Congress has offered defendants a relatively neutral forum and has policed the diversity jurisdiction of the federal court system, balancing the interests at play in the legislation it passes. We believe that the "preponderance of the evidence" test best comports with the balance struck. It does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages. On the other end of the spectrum, requiring the defendant to prove that the amount in controversy "may" meet the federal requirement would effectively force the plaintiff seeking remand to prove in rebuttal that only a relatively small amount of damages is legally possible.[4] Considering the ends of the spectrum,

---

**4.** An interesting illustration of this point is found in *Corwin Jeep Sales & Serv., Inc. v. American Motors Sales Corp.*, 670 F.Supp. 591 (M.D.Pa. 1986). In that case, the district court considered a petition to remand a case that had been removed. The complaint filed in state court did

[f]or all practical purposes ..., whether a federal court can exercise diversity of citizenship jurisdiction over a case would depend upon which party has the burden of proof to prove or [to disprove] jurisdictional amount to a legal certainty, since the parties might well prefer to forego their chosen forum rather than being forced to prove the other side's damages case.

*Garza*, 752 F.Supp. at 756–57. We believe that the mean between the extremes unsettles to the least extent the balance struck between the defendant's right to remove and the federal interest in limiting diversity jurisdiction.

We also believe that the "preponderance of the evidence" standard best comports with the Supreme Court's views expressed in *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936):

> The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in an appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that *the party alleging jurisdiction justify his allegations by a preponderance of the evidence.*

(Emphasis added.)

The "legal certainty" test in removal cases arose in a context where the plaintiff's prayer for damages in state court exceeded the federal amount-in-controversy requirement. In such a case as that, it is proper to presume that the plaintiff's prayer is an appropriate presentation of potential damages because the damages sought are against the plaintiff's forum-selection interests. There can be no such presumption where there is no specific prayer for damages. Thus, the "legal certainty" test should not be applied to situations such as the instant case, where damages are unspecified.

**2**

■ Returning to the instant case, Gafford contends that GE never met its burden of proving that the amount in controversy exceeded $50,000 once she set that issue in controversy. GE responds that Earl F. Jones, Senior Counsel for Labor and Employment at GE's Appliance Park facility in Louisville, Kentucky, testified at the pretrial hearing on jurisdiction that, should Gafford prevail on her claims, she would be entitled

---

not specify money damages. The district court declared that "the party seeking to invoke federal jurisdiction has the burden of demonstrating its existence." *Id.* at 595. It determined that this burden is met by showing "a probability" that the value of the rights at stake may equal or exceed the amount-in-controversy requirement. *Id.* at 595–96. It went on to find that this burden was met. *Id.* at 596 ("this court cannot find to a legal certainty that the parties' respective rights under the franchise agreement are worth less than [the jurisdictional amount]"). In conclusion, however, the court seemed to slip: "[T]his action was properly removed ... (2) because our independent inquiry into the underlying facts demonstrates that Corwin [the *plaintiff*] has *failed to establish* that the [amount-in-controversy requirement] has *not* been met." *Id.* at 596–97 (emphasis added).

to a sum greater than $50,000 for backpay, as well as additional amounts for attorney fees and other damages. Gafford did not offer any rebuttal witnesses at the jurisdiction hearing. Nor were any affidavits filed to contradict Jones' testimony. Given GE's burden of proof settled upon above, we find that the district court did not err in finding that the amount in controversy exceeded $50,000.

## C

### 1

Gafford also takes issue with the district court's determination that diversity of citizenship among the parties was complete. Gafford is a citizen of Kentucky. This is undisputed. For purposes of determining diversity jurisdiction, a corporation can be a citizen of two states: (1) its state of incorporation; and (2) the state of its principal place of business. *See* 28 U.S.C. § 1332(c) (1988). GE is incorporated in New York. This is also undisputed. What is disputed is whether GE's principal place of business is in Kentucky. Gafford basically argues that, given the size of the GE facility in Kentucky which encompasses over 9000 employees, "[i]t would be reasonable to conclude that Jefferson County, Kentucky is a principal place of business for General Electric." Gafford's Br. at 9 (emphasis added). Gafford maintains that GE did not make a sufficient showing of workforce distribution and the like in order to meet its burden of proof, which we take to be a preponderance of the evidence. *See McNutt*, 298 U.S. at 189, 56 S.Ct. at 785; *Yeldell*, 913 F.2d at 537.

■ By common sense and by law, a corporation can have only one *principal* place of business for purposes of establishing its state of citizenship. *J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 406 (5th Cir. 1987); *see also* 28 U.S.C. § 1332(c) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and *the* State where it has its principal place of business") (emphasis added). At the pretrial hearing on jurisdiction, and in an affidavit submitted before this hearing took place, GE submitted evidence to the court that Sche-

nectady, New York is its principal place of business, where basic corporate and personnel records are maintained. At the hearing, Earl F. Jones produced a copy of the 10–K form GE had filed with the United States Securities and Exchange Commission for the fiscal year ended December 31, 1990. The following testimony was then introduced:

> [MR. JONES].... [O]n page two of this document, indicates that General Electric's address is 1 River Road, Schenectady, New York and that is in fact the principal place of business of the corporation.

> [MR. HOPSON, COUNSEL FOR GE]. Okay. Has the principal place of business been New York at all times material to this case?

> [MR. JONES]. Yes.

J.A. at 237. In the affidavit submitted by GE, Jones also noted:

> 6. There are many states in the United States in which General Electric has extensive manufacturing operations. Several of those states contain General Electric business operations that generate more revenue for General Electric than Appliance Park. For example, the General Electric aircraft engine plant near Cincinnati, Ohio, generates more sales and has more employees than Appliance Park.

*Id.* at 22–23. Gafford presented no evidence to rebut the affidavit or the testimony put forth by Jones at the jurisdiction hearing.

### 2

■ "The question of a corporation's principal place of business is essentially one of fact, to be determined on a case-by-case basis, taking into account such factors as the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations." *Northeast Nuclear Energy Co. v. General Elec. Co.*, 435 F.Supp. 344, 345 (D.Conn.1977). Since determination of a corporation's principal place of business is a question of fact, it is subject to the clearly erroneous standard of review. *Riggs v. Island Creek Coal Co.*, 542 F.2d 339, 342 (6th Cir.1976).

In making this determination, courts have followed various approaches, or "tests." The "nerve center" test emphasizes the situs of corporate decision-making authority and overall control. *See Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862, 864–65 (S.D.N.Y.1959). The "corporate activities"/"place of activity" test emphasizes the location of production activities or service activities. *See Kelly v. United States Steel Corp.,* 284 F.2d 850, 854 (3d Cir.1960). Many courts and commentators have noted that these tests are not mutually exclusive. The Fifth Circuit, for example, pointed out in *J.A. Olson:*

> ... In interpreting [28 U.S.C. § 1332(c)] and [its] legislative history, we note that the cases indicate there has been no clearly consistent method applied to determine the principal place of business of a corporation. Although many factors have been considered and emphasized, two major focal points have evolved: the nerve center of the corporation and the place of activity of the corporation. These focal points have often been referred to as separate tests as though the application of one precluded the application of the second, but as we shall see, the ultimate question is not which test to apply, but rather which consideration, on the basis of the totality of the facts, predominates....
>
> ....
>
> ... [N]either the "nerve center" nor the "place of activity" test inflexibly dictates the corporation's principal place of business. Rather the tests simply stand for general rules regarding the determination of a particular corporation's principal place of business: the principal place of business of a far-flung corporation will generally be its nerve center, *see Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862 (S.D.N.Y.1959); the principal place of business of a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state is generally the district of the former, *see Kelly v. U.S. Steel Corp.,* 284 F.2d 850 (3d Cir. 1960); and the principal place of business of a corporation with its corporate headquarters in one state and its single activity

in another will generally be in the state of its operations, *see Lurie Co. v. Loew's San Francisco Hotel Corp.,* 315 F.Supp. 405 (N.D.Cal.1970).... The two tests are therefore not mutually exclusive but rather complementary.

818 F.2d at 406, 409–10 (footnote omitted); *see also North Star Hotels Corp. v. Mid–City Hotel Assocs.,* 696 F.Supp. 1265, 1270 (D.Minn.1988); *Northeast Nuclear Energy,* 435 F.Supp. at 346 (citing cases); 13B *Federal Practice* § 3625, at 622–25. Noting the interrelationship between the two tests, many courts have simply adopted the "total activity" test, which encompasses the two as it recognizes that the approach to determining a corporation's principal place of business will vary with the facts of each case. *See J.A. Olson,* 818 F.2d at 404, 406; *Vareka Invs., N.V. v. American Inv. Properties, Inc.,* 724 F.2d 907, 910 (11th Cir.), *cert. denied,* 469 U.S. 826, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984); *Toms v. Country Quality Meats, Inc.,* 610 F.2d 313, 315 & n. 6 (5th Cir.1980); *White v. Halstead Indus., Inc.,* 750 F.Supp. 395, 398 (E.D.Ark.1990); *North Star Hotels,* 696 F.Supp. at 1270; *Associated Petroleum Producers, Inc. v. Treco 3 Rivers Energy Corp.,* 692 F.Supp. 1070, 1074 (E.D.Mo.1988); *Northeast Nuclear Energy,* 435 F.Supp. at 346.

This circuit has not specified that a particular test be used, but has suggested that the "total activity" test would be the most appropriate. In *Riggs,* this court stated that a "[mining] corporation's headquarters *may not invariably* govern the location of its principal place of business." 542 F.2d at 342 (emphasis added). Where the "bulk" of a corporation's business is dispersed over several states, "the corporation's headquarters *assumes more significance as the compelling factor* in the principal place of business test." *Id.* (emphasis added). The notion that the approach to determining a corporation's principal place of business varies with the facts of each case echoes this court's statement in *Continental Coal Corp. v. Roszelle Bros.,* 242 F. 243, 246 (6th Cir.1917):

> But we think the place where the principal office is located is not necessarily the place where the principal business is carried on.

Such may or may not be the case. Nor as between the place where a mining corporation's actual operations are carried on and the place where the selling is done and the principal office maintained can the latter be declared in all cases, as matter of law, the principal place of business. All the authorities recognize, as do counsel, that the question as to the place where the bankrupt carried on its principal business is purely one of fact. Each case depends upon its own special circumstances.

Making explicit what was implicit in *Riggs* and *Roszelle,* we take this opportunity to direct courts in this circuit to employ the total activity test, taking into consideration all relevant factors and weighing them in light of the facts of each case.

**3**

■ Given the test to be applied, we find that the district court did not clearly err in determining GE's principal place of business to be New York. There was enough evidence before the district court for it to determine that GE's operations were dispersed, and that GE's basic corporate and personnel records were maintained in New York. As noted above, Gafford rebutted none of this evidence with testimony at the jurisdiction hearing or by affidavit. The district court analyzed the evidence and arguments in the following way:

> [Gafford] details the scope of [GE's] business in Kentucky and concludes that [GE] is a corporate citizen of Kentucky. However, even though [GE's] manufacturing plant at G.E. Appliance Park in Louisville, Kentucky is extensive, size alone does not make it the principal place of business. The defendant is a large corporation with several places of operation.

Where a corporation carries on its business in a number of states and no one state is clearly the state in which its business is principally conducted, the state in which the substantial part of its business is transacted and from which centralized general supervision of its business is exercised is the state in which it has its principal place of business.

*Jackson v. Tennessee Valley Authority,* 462 F.Supp. [45, 49 (M.D.Tenn.1978), *aff'd,* 595 F.2d 1120 (6th Cir.1979) ].

[Gafford] does not refute the evidence presented that General Electric has its corporate headquarters in Fairfield, Connecticut, and its principal place of business in Schenectedy [sic], New York. Since General Electric is neither incorporated nor has its principle [sic] place of business in Kentucky, it is not a citizen of the state for the purposes of diversity.

J.A. at 26. Given GE's basic corporate structure, it was not clearly erroneous to conclude that the significant administrative activity in New York justified finding New York to be GE's principal place of business.[5]

**4**

■ Next, Gafford argues that the case should never have been removed to federal court since the petition for removal did not affirmatively state GE's principal place of business. GE's petition for removal stated, in relevant part:

> 2. This action is a civil action of which this Court also has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by the Petitioner pursuant to 28 U.S.C. § 1441(a) in that it is a civil action in which the matter in controversy exceeds the sum or

---

**5.** We note that numerous other courts, with perhaps more evidence before them, have made the same conclusion as the district court made in the instant case. *See, e.g., In re Air Crash Disaster,* 781 F.Supp. 1307, 1310 (N.D.Ill.1991) ("General Electric is a New York corporation with its principal place of business in New York."); *Reaction Molding Technologies, Inc. v. General Elec. Co.,* 588 F.Supp. 1280, 1282 (E.D.Pa.1984) ("[GE] is a New York corporation with its principal place of business in New York."); *Appalachian Power Co. v. General Elec. Co.,* 508 F.Supp. 530, 531

(W.D.Va.1980) ("... General Electric Company, a New York corporation with its principal place of business in that state ..."), *aff'd,* 665 F.2d 1038 (4th Cir.1981); *Northeast Nuclear Energy,* 435 F.Supp. at 348 ("The people, the money, the physical assets, the company records are predominantly in New York. New York then is the state where General Electric's daily corporate operations are directed and where it conducts a substantial portion of its business and therefore is its principal place of business.").

value of Fifty Thousand Dollars exclusive of interest and cost, and is between citizens of different states. The Petitioner is a corporation organized and incorporated under the laws of the State of New York, having its principal place of business in a state other than Kentucky, and is therefore a citizen of a state other than Kentucky. The Respondent is a citizen of the Commonwealth of Kentucky.

J.A. at 5–6. Gafford cites a 1904 Nevada case and *Stanley Elec. Contractors, Inc. v. Darin & Armstrong Co.*, 486 F.Supp. 769 (E.D.Ky.1980), in support of her argument that GE's petition for removal was invalid because, on its face, it did not specifically name the state of GE's principal place of business, merely indicating its principal place of business to be "other than Kentucky."

In response to her argument, GE points out that *Stanley* itself allows a party to cure technical deficiencies in a petition for removal (even after 30 days have passed from the time the defendant received a copy of the initial pleading or the time of service of summons upon the defendant, *see* 28 U.S.C. § 1446(b) (1988)):

> ... Better, if the jurisdiction in fact exists, to permit the petition for removal to be amended to reflect it. It appears that the time has come to reexamine this entire matter and expressly adopt the approach ... that amendments to the jurisdictional allegations of removal petitions should be permitted in the same manner as amendments to any other pleading.
>
> ....
>
> It must be made clear that this opinion is not to be construed as departing in any way from the precept that the *facts* giving rise to federal jurisdiction must be strictly construed and alleged with particularity. The decision holds only that the time has come to apply the principles of modern pleading relating to *amendments* to re-

moval petitions, and that amendments should be permitted, to implement the spirit of the statute and rules cited herein, where the jurisdictional facts do indeed exist, and the parties are in law entitled to invoke the jurisdiction of the federal court.

> ....
>
> Virtually all of the commentators and the great weight of judicial authority favor the rule adopted by this decision. Indeed, the strict view reflected by the earlier cases hereinabove cited has been expressly criticized.
>
> For the above reasons, the court holds that a petition for removal may be amended under the same considerations governing the amendment of any other pleading containing jurisdictional allegations.

486 F.Supp. at 772–73 (emphasis in original; footnotes omitted). GE contends that *even if* the face of the pleading was deficient, GE cured the deficiency by evidence subsequently proffered that New York was its principal place of business.

We agree with GE. If and to the extent that GE's petition for removal was technically deficient in its assertion of its principal place of business, it was cured by subsequent information GE supplied to the district court and entered into the record of this case. *See Giangola v. Walt Disney World Co.*, 753 F.Supp. 148, 153 n. 5 (D.N.J.1990) ("The information submitted after the issue of the removal's propriety was raised constitutes an amendment of the petition. Because diversity of the parties was alleged in the original petition, defendant could amend by providing allegations of greater specificity even after the thirty day limit to file a new petition had expired.") [6]; *cf.* 28 U.S.C. § 1653 (1988) ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 317–18 (9th Cir.1969); *Hendrix v. New Amsterdam Casualty Co.*,

**6.** Along these lines, we see no point at this point in requiring GE to file a formal amended petition for removal where the affidavit it submitted and the evidence it presented at the jurisdiction hearing plainly state that New York is its principal place of business. *Cf. George v. Douglas Aircraft Co.*, 332 F.2d 73, 74 n. 1 (2d Cir.) ("Although the point has not been raised, we note that the com-

plaint is defective in failing to assert that Douglas' principal place of business is not Texas. 28 U.S.C. § 1332(c) and F.R.Civ.Proc. Form 2. However, we shall assume that Douglas' principal place of business is in California, and that the complaint could have been amended to allege this."), *cert. denied*, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964).

390 F.2d 299, 300–02 (10th Cir.1968); *Stanley,* 486 F.Supp. at 772–73; *Jackson v. Metropolitan Life Ins. Co.,* 433 F.Supp. 707, 709 (E.D.Ky.1977).

### D

Finally, on the subject of improper removal, Gafford argues that GE was required to post a bond to remove the case. In doing so, she seems to refuse to accept the fact that the bond requirement has been repealed. In her Brief, she writes:

> In the instant case, the Petition failed to strictly comply with the requirements for the procedure for removal under Title 28, U.S.C. Section 1446(d). The statute specifically requires that a Petition for Removal be accompanied by a bond with good and sufficient surety for the defendant to pay all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed.

Gafford's Br. at 13. It is clear that the former bond requirement of 28 U.S.C. § 1446(d) was repealed by 1988 amendments to the statute. Removal in the instant case (October 18, 1989) took place almost a year after the effective date of this repeal (November 19, 1988). *See* 28 U.S.C.A. § 1446(d) (West Supp.1992) (discussing effective date of amendment in commentary). Gafford was informed on no fewer than two separate occasions that the bond requirement had been repealed—in Defendant's Response to Motion to Remand at 7–8; and in the district court's Memorandum Opinion and Order at 1 (dated January 16, 1990). In light of these facts, we find it quite troubling that Gafford

insists on making her bond argument before this court.

### IV

### A

Gafford next contends that the district court erred in applying Rule 56 of the Federal Rules of Civil Procedure [7] instead of the Kentucky summary judgment standard in disposing of GE's motion for summary judgment. She essentially argues that, since Kentucky's procedural rules and case law relating to summary judgment affect substantive legal rights, a federal court in diversity should apply Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476 (Ky.1991).[8]

Gafford's argument is readily put to rest. This court rejected such an argument in *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 459 (6th Cir.1986). In that case, employees asserted claims of wrongful discharge in a Michigan state court. The claims were removed to federal court on the basis of diversity of citizenship. The district court granted summary judgment in favor of the employer, and the employees appealed. The employees argued, *inter alia,* that the court erred in applying the standards of Rule 56 of the Federal Rules of Civil Procedure to the case. This court expressly rejected that argument:

> [One of the employees contends that] Sears would not have qualified for summary judgment under Michigan law and that the outcome of a diversity case should not be different in a federal court than it would have been in the state whose substantive law controls. This argument fails

---

7. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988); *see also Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987).

8. The relevant passage of this opinion, quoted by Gafford in her Brief at 12, is as follows:

> The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor. Even though a trial court may not believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact. The trial judge must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. *Steelvest,* 807 S.W.2d at 480 (citations omitted).

to recognize the difference between procedural rules and substantive law. The Federal Rules of Civil Procedure are the rules of practice which apply to civil actions in the federal courts, regardless of whether jurisdiction is based on federal question or diversity of citizenship. Summary judgment is a procedural device for deciding a case without the necessity of a full-blown trial. When there is a motion for summary judgment in a diversity case, the provisions of Rule 56 control its determination. The fact that the Michigan procedure for summary judgment has different requirements from Rule 56 is immaterial. The requirements of Rule 56 control. . . .

*Reid,* 790 F.2d at 459 (citations omitted); *see Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.,* 709 F.2d 427, 430 n. 3 (6th Cir.1983) ("[I]n this—and all other Circuits—the Federal Rules of Civil Procedure, Rule 56 standard governs summary judgment in diversity cases."); *Schultz v. Newsweek, Inc.,* 668 F.2d 911, 917 (6th Cir.1982) ("Summary judgment practice in federal courts is controlled by Rule 56, unaffected by state procedural rules."). Gafford's contention on this score is without merit.

**B**

Gafford maintains that, even under the federal summary judgment standard, the district court erred in granting GE's motion for summary judgment as to her claims of wrongful discharge, constructive discharge, and intentional infliction of emotional distress. We find that the district court adequately set forth the reasons why Gafford's contentions on this score are without merit in its memorandum opinion and order in response to GE's motion for summary judgment.

**V**

**A**

■■■ Gafford raises numerous objections to the jury instructions given in this case. First, she contends that the district court erred by presenting the jury with a three-stage order of proof as opposed to merely instructing the jury on the ultimate issue of gender discrimination. She also seems to imply that the district court, sitting in diversity, erred when it presented to the jury the controlling federal, as opposed to state, principles on this matter. *See* Gafford's Br. at 19 (district court "failed to instruct the jury according to the law of the case in the Commonwealth of Kentucky, when it failed to give plaintiff's tendered instructions").

"Although state law controls the substantive content of jury instructions in diversity actions such as this, 'federal law governs our standard of review for determining whether a jury instruction is prejudicial.'" *Bagherzadeh v. Roeser,* 825 F.2d 1000, 1003 (6th Cir. 1987) (quoting *Teal v. E.I. DuPont de Nemours & Co.,* 728 F.2d 799, 802 (6th Cir.1984)). "Jury instructions are reviewed as a whole in order to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury to reach its decision." *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 72 (6th Cir. 1990); *see also DSG Corp. v. Anderson,* 754 F.2d 678, 682 (6th Cir.1985).

> The rule in federal courts in regard to the propriety of instructions on special requests is that the court is not bound to give instructions in either the form or the language in which they are requested, so long as the substance of the requested charge, which is supported by the evidence, is contained in the given charge.

*Coursey v. Morgan Driveway, Inc.,* 366 F.2d 504, 508 (6th Cir.1966). "A party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Bowman v. Koch Transfer Co.,* 862 F.2d 1257, 1263 (6th Cir.1988).

■■■ Kentucky Revised Statutes Annotated § 344.040 is virtually identical to the corresponding provision of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, and Kentucky courts have followed federal law in interpreting the Kentucky statute. *See Kentucky Comm'n on Human Rights v. Kentucky,* 586 S.W.2d 270, 271 (Ky.Ct.App.1979); *see also Irvin v. Airco Carbide,* 837 F.2d 724, 726 n. 1 (6th Cir.1987). The district court instructed the jury that, in order to prevail on a sex discrimination claim, a plaintiff must first establish a *prima facie* case. If a *prima facie* case has been made, the employer must

then articulate a legitimate, nondiscriminatory reason for its actions. If that is done, the plaintiff must show that the articulated reason was a mere pretext for discrimination. This order of proof comports with federal law. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). Thus, since Kentucky

9. Though we find that the district court did not commit reversible error in generally instructing the jury on a three-stage as opposed to simply the ultimate issue, we do not mean by this to agree with how the district court specifically construed each stage. For example, we note that the jury instructions specifically relating to Gafford's *prima facie* case include an improper element:

> First step. For a prima facie case:
> A. That she is a member of a protected class. Now it's stipulated that Carol Gafford is a female, is a member of a class of persons protected under the Kentucky Civil Rights Act. So you shall consider this element proven.
> B. That there was a vacant position at GE for which GE was seeking applicants.
> C. That she was qualified for and applied or attempted to apply for the position, and
> D. That she was rejected, *and*
> E. *That a person with lesser qualifications than Gafford was hired.*
> If you believe from the evidence that Mrs. Gafford has satisfied *all* of these elements then she has established what is called a prima facie case.

Trial Tr. at 3–523 to –524 (emphasis added). As the D.C. Circuit pointed out in *Mitchell v. Baldrige,* 759 F.2d 80, 84–86 (D.C.Cir.1985), the *McDonnell Douglas* formulation of what constitutes a *prima facie* case requires only that the plaintiff be "qualified." The court in *Mitchell* specifically rejected a district court's attempt to add the additional component "that the plaintiff must demonstrate that he is or was at least as qualified as the person chosen for the position." 759 F.2d at 84. In an unpublished opinion, this court made essentially the same observation:

> Appellants next claim is that, in order to prevail, [the plaintiff] was required to prove that she was more qualified than the persons selected for the various coaching positions. They urge us to adopt the Fourth Circuit rule that a plaintiff in a Title VII employment discrimination case is required to prove that she was better qualified than the other candidates before the trier of fact could permissibly find that discriminatory reasons more likely motivated the employer. *See Anderson v. Bessemer City,* 717 F.2d 149 (4th Cir.1983), *rev'd on other grounds,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).
> We decline to adopt the Fourth Circuit rule.

follows federal law on this score, we find that the district court did not commit reversible error by guiding the jury through a three-stage order of proof as opposed to instructing the jury solely on the ultimate issue of sex discrimination.[9]

## B

Next, Gafford contends that when the district court let her discrimination claim (with

> The plaintiff's ultimate burden in this case, of course, was to show that she was the victim of intentional discrimination. The *McDonnell Douglas* framework organizes the evidence and enables the trier of fact to draw inferences about the motivation of the defendant. Creating still another evidentiary burden unnecessarily complicates the issue. Whether the plaintiff is more qualified than those selected for a job is certainly relevant to the defendant's motivation when the defendant contends that its decision was based on another applicant's superior qualifications. The fact that a rejected applicant was "least" qualified does not assure that the employer's motive was not discriminatory; nor does the employer's refusal to hire the "best" qualified applicant necessarily indicate discriminatory intent. Accepting, *arguendo,* that [the plaintiff] was less qualified than the successful applicants, the jury could still have permissibly concluded that the defendants' discriminatory intent was the reason for the decision not to hire her. We therefore hold that, while the relative qualifications of the applicants is relevant, a Title VII plaintiff is not required to prove she is "better" qualified than other candidates in order to prevail. We observe in passing that despite having had an occasion to consider the matter, the Supreme Court has not held that a Title VII employment discrimination plaintiff must prove she is "better" qualified.

*Biver v. Saginaw Township Community Sch.,* 805 F.2d 1033 (6th Cir.1986) (footnote omitted); *accord Perkins v. District of Columbia,* 769 F.Supp. 11, 15 (D.D.C.1991); *Downey v. Isaac,* 622 F.Supp. 1125, 1131–32 (D.D.C.1985), *aff'd,* 794 F.2d 753 (1986); *Woodruff v. Kansas Bd. of Regents,* No. 87–4236–S, 1989 WL 117329, at *2, 1989 U.S.Dist. LEXIS 11729, at *5–*7 (D.Kan. Sept. 1, 1989).

GE apparently believes that the person chosen for a particular position must be shown to have lesser qualifications than the plaintiff for the plaintiff to successfully make a *prima facie* case. GE proposed the relevant jury instructions that the district court adopted. *See* Defendant's Proposed Jury Instructions and Special Verdict Forms at 12. The only authority GE seems to cite for this proposition is *Haun v. Humana, Inc.,* 651 F.Supp. 120, 122 (W.D.Ky.1986). *See* Defendant's Response to Plaintiff's Motion for a New Trial at 6. The court in *Haun* wrote:

regard to the Meeting Planner position) go to the jury, it necessarily found there to be a *prima facie* case. "This was a legal issue for the court not the jury," she argues. Gafford's Br. at 20. Thus, in her view, it was error to submit to the jury the question whether a *prima facie* case had been established.

 In *Burdine,* the Supreme Court stated that the question of whether a *prima facie* case has been made is one for the factfinder:

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination....

. . . .

The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.... Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the em-

ployee. If the *trier of fact* believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

450 U.S. at 252–54, 101 S.Ct. at 1094 (emphasis added; footnotes omitted); *cf. Tye v. Board of Educ.,* 811 F.2d 315, 317 (6th Cir.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 285, 98 L.Ed.2d 246 (1987). In other words, the plaintiff in a disparate treatment case must prove to the factfinder, by a preponderance of the evidence, that each component of her *prima facie* case has been satisfied. *Cf. Sherpell v. Humnoke Sch. Dist. No. 5,* 874 F.2d 536, 539 (8th Cir.1989) (upholding district court's conclusion that *prima facie* case had not been shown where plaintiff "did not meet her burden of proving that she applied for any position").

 *Determining the components* of the *prima facie* case is a matter of law. *See Hagans v. Clark,* 752 F.2d 477, 480 (9th Cir.1985) ("The decision ... to interpret case law to require a particular prima facie showing, is a legal judgment freely reviewable on appeal."); *cf. Mitchell,* 759 F.2d at 84–86 (holding that district court's formulation of the elements of a Title VII *prima facie* case of disparate treatment was legally incorrect,

---

The Court in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), however, held that in a promotion or a hiring case, a claimant must show not only that another person was hired for an opening but also that the qualifications of the person hired were less than, not merely equal to, those of the claimant. *Id.* at 258–59, 101 S.Ct. at 1096.

651 F.Supp. at 122. This passage misstates *Burdine.* In the relevant passage of *Burdine,* the Supreme Court merely held that a defendant employer was not to bear the burden of proving that a person hired for a particular position was objectively more qualified than a disparate treatment plaintiff. A defendant employer is not prohibited by Title VII from hiring someone from a non-protected group over someone with equal qualifications from a protected group—*"provided that the decision is not based upon unlawful criteria." Burdine,* 450 U.S. at 259, 101 S.Ct. at 1097 (emphasis added).

Though we note that the district court erred in its formulation of the elements of a *prima facie* case of sex discrimination, we came across this

error, as it were, by happenstance. Though we may properly review *jurisdictional* issues *sua sponte, see, e.g., Schrader v. Commissioner,* 916 F.2d 361, 362 (6th Cir.1990), other issues must be raised by a party to be properly before us. Since we find that this issue was not raised by Gafford, we conclude that we would overstep our bounds as an appellate court to consider taking any action based on this finding of error. *See, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990) (" 'Judges are not expected to be mindreaders. Consequently, a litigant has an obligation "to spell out its arguments squarely and distinctly," or else forever hold its peace.' ") (citations omitted); *see also Bob Willow Motors, Inc. v. General Motors Corp.,* 872 F.2d 788, 795 (7th Cir.1989) ("Federal Rule of Appellate Procedure 28(a)(4) sets the standard for an appellant's argument, requiring it to 'contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.' ").

and finding that, under the appropriate formulation, the district court's factual findings required the conclusion that plaintiff had proved a *prima facie* case). Such a determination may vary depending on the "differing factual situations" of disparate treatment cases. *See Burdine*, 450 U.S. at 253–54 n. 6, 101 S.Ct. at 1094 n. 6; *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *see also Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1217 (8th Cir.1990) (noting that the application requirement in setting out a Title VII *prima facie* case does not require formal application where a job opening is not posted and either (1) the plaintiff had no knowledge of the job from other sources until it was filled or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to formally apply). If the plaintiff succeeds in convincing the factfinder that the judicially predetermined elements of her *prima facie* case have been satisfied, a *prima facie* case has been established, *cf. Mitchell*, 759 F.2d at 86 n. 4, and the defendant must then respond or face judgment for the plaintiff.[10]

In light of the foregoing discussion, it is clear that the issue of whether a *prima facie* case has been established is an issue of both law and fact and thus is not, as Gafford contends, a legal issue for the court not the jury. Thus, it was not error *per se* for the district court to have submitted the question of whether a *prima facie* case had been established to the jury. We reject Gafford's contention that when the district court let her discrimination claim (with regard to the Meeting Planner position) go to the jury, it necessarily found there to be, as a matter of law, a *prima facie* case. From the above discussion, it is clear that a court may submit matters to the factfinder to resolve genuine issues of material fact.

### C

Gafford raises other concerns about the jury instructions relating to the second and third stages of the three-stage order of proof in a disparate treatment case. *See generally supra* V.A. Without rendering an opinion on the adequacy of the jury instructions with regard to the second and third stages of the three-stage order of proof, we find that any error would be harmless. The trial court submitted the following interroga-

---

10. We note that there is some confusion in the case law, at least on the surface, as to whether the finding that a *prima facie* case has or has not been established is, all things considered, a matter of fact, *see, e.g., Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1443 (11th Cir.) ("Whether a prima facie case of discrimination has been shown in any given situation is essentially a factual question."), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); *Morrison v. Booth*, 763 F.2d 1366, 1371 n. 2 (11th Cir.1985) ("Whether a prima facie case has been shown is a fact question."); *see also Chambers*, 909 F.2d at 1216 ("We will not reverse the district court's finding that no prima facie case of discrimination was established unless that conclusion was clearly erroneous."), or a matter of law, *see, e.g., Gay v. Waiters' & Dairy Lunchmen's Union Local 30*, 694 F.2d 531, 543–44 (9th Cir. 1982) ("Applying the clearly erroneous standard to the district court's determination that an employment discrimination plaintiff failed to establish a prima facie case of disparate treatment appears to us to be inconsistent with the theoretical and functional role of the *McDonnell Douglas* burden-shifting procedure, with the Supreme Court's analysis and holding in *Furnco[Constr. Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)], and with the purpose of Rule 52(a).") (footnotes omitted). *See Barnes v. Small*, 840 F.2d 972, 976 (D.C.Cir.1988) ("It is not completely clear, however, whether a determination that a plaintiff has failed to make out a *prima facie* case is a question of fact governed by the clearly erroneous standard of review or a question of law subject to review *de novo*."); *Hagans*, 752 F.2d at 482 ("Some uncertainty exists as to the proper standard to be used in reviewing the district court's finding regarding establishment of a prima facie case."); *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir.1983) ("Our past cases are divided as to whether our review of a lower court's ultimate finding regarding establishment of a prima facie case is *de novo* or under a 'clearly erroneous' standard."). As the foregoing discussion indicates, the determination that a plaintiff has or has not established a *prima facie* case of disparate treatment encompasses both questions of law (viz., determination of the elements of a *prima facie* case), and questions of fact (viz., whether the plaintiff has proven to the factfinder each element of the *prima facie* case by a preponderance of the evidence). Thus, review of a district court's determination regarding the existence of a *prima facie* case may be compartmentalized into a review of the factfinder's conclusions of fact and the court's determinations/applications of law. Consequently, Gafford's suggestion that the establishment of a *prima facie* case is a legal issue for the court and not the jury is not entirely true.

tory to the jury: " '1. Do you believe from the evidence that Mrs. Gafford has established a prima facie case as set out in the First Step of the instruction.? YES NO [ ].' " J.A. at 81. The jury responded in the negative. Since the jury did not have to go further, any error with regard to subsequent stages was harmless.

## D

Gafford's remaining arguments regarding jury instructions are either wholly meritless or are based upon misapprehensions of prevailing law.

## VI

 Next, Gafford argues that she deserves a new trial because the district court's conduct violated the standards set forth by this court in *United States v. Hickman*, 592 F.2d 931 (6th Cir.1979). In *Hickman*, this court found that the district court erred when it "voluntarily interjected itself in the proceedings over 250 times" during a one-day trial. *Id.* at 932. The district court belittled and chastised counsel repeatedly in front of the jury; excluded testimony without objection; conducted a prosecutor's redirect examination itself; and examined a defense witness itself.

In the instant case, Gafford contends that the district court erred by trying too hard to move the case along. According to Gafford, the court interjected itself often in the trial, thus creating an "atmosphere of haste." Gafford's Br. at 23.

Upon review of the record, it appears that the trial court's demeanor did not deny Gafford a fair trial. Most of the interjections were generally outside the presence of the jury. They were made to both parties, and were largely attempts to avoid cumulative evidence. Gafford's argument here is without merit.

## VII

Though Gafford's Brief is often difficult to comprehend, she seems to argue that the district court erred by granting a directing verdict for GE on the matter of whether GE discriminated against her in eventually hiring a man for the vacant Manager position. *Cf.* Gafford's Reply Br. at 18 ("As to the directed verdict on the Kendle manager position, there were sufficient facts in the record to allow the jury to decide the case. Clearly there was a prima facie case of dissemination [sic]. . . ."). We find that the directed verdict on this issue was not improper.

 This court's standard of review of motions for directed verdict is identical to the standard used by the district court. *See Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1328 (6th Cir.1992). "In federal court diversity cases, this circuit adheres to the minority rule that state law governs the standard for granting motions for directed verdicts and judgments notwithstanding the verdict." *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1482 (6th Cir.1991); *see also Miller's Bottled Gas, Inc. v. Borg–Warner Corp.*, 955 F.2d 1043, 1050 (6th Cir.1992); *O'Neal v. Burger Chef Sys., Inc.*, 860 F.2d 1341, 1347 (6th Cir.1988); *Warkentien v. Vondracek*, 633 F.2d 1, 6 (6th Cir.1980). In *Borg–Warner*, we accepted the following portrayal of the Kentucky standard governing directed verdicts:

> The only question to be determined by the court on a motion for directed verdict is whether the plaintiff has sustained the burden of proof by "more than a scintilla of evidence," that is, has the plaintiff submitted "evidence of probative value having fitness to induce conviction in the minds of reasonable men?" In so ruling, "The court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion, and a verdict should not be directed unless the evidence is insufficient to sustain the verdict. The evidence of such party's witnesses must be accepted as true." It is well settled that circumstantial evidence "will authorize a submission of the contested issue to the jury," and is capable of sustaining its verdict.

955 F.2d at 1050 (quoting *Grant v. Wrona*, 662 S.W.2d 227, 229 (Ky.Ct.App.1983) (citations omitted)); *see also Wyant v. SCM Corp.*, 692 S.W.2d 814, 816 (Ky.Ct.App.1985).

Given this standard of review, and upon thorough review of the record, we agree with the district court that the claim relating to the Manager position should not have been submitted to the jury.

## VIII

Finally, Gafford contends that the district court erred by not granting her motion for a new trial.

> ... In a diversity case, the question of whether a new trial is to be granted is a federal procedural question and is to be decided by reference to federal law.... The federal rule is that the question of granting or denying of a motion for a new trial following a jury verdict addresses itself to the judicial discretion of the trial judge, and his decision will not be reversed in the absence of a showing of an abuse of discretion....
>
> In ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, a district judge may compare the opposing proofs and weigh the evidence and it is the duty of the judge to set aside the verdict and grant a new trial if he is of the opinion that the verdict is against the clear weight of the evidence.... However, "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). "Thus, while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached." *Bruner v. Dunaway*, 684 F.2d [422, 425 (6th Cir.1982)]."

*Toth v. Yoder Co.*, 749 F.2d 1190, 1197 (6th Cir.1984); *see also J.C. Wyckoff*, 936 F.2d at 1487.

This court in *J.C. Wyckoff* further described the deference due a district court's decision to deny a motion for a new trial:

> Given the discretion of the trial court engaged in this task, as compared to the function of the trial court when ruling on motions for judgment notwithstanding the verdict, appellate courts traditionally have been reluctant to overturn a trial court's order granting or denying a motion for a new trial that is based on the ground that the verdict was against the weight of the evidence. *Duncan v. Duncan*, 377 F.2d 49, 53 (6th Cir.), *cert. denied*, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967). The deferential standard of review accorded to these orders is articulated in *Logan v. Dayton Hudson Corp.*, 865 F.2d 789 (6th Cir.1989), where we stated:
>
> > Generally, the grant or denial of a new trial is purely within the discretion of the trial court and will not be reversed except upon a showing [of] abuse of discretion. Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment.
>
> *Id.* at 790 (citations omitted).

936 F.2d at 1487 (footnotes omitted).

In the instant case, while Gafford did file a motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, it does not seem that she alleged that the verdict was against the weight of the evidence. Even in her Brief, though she states that "[t]he jury verdict was clearly against the weight of the evidence," Gafford's Br. at 24, it is not clear from her argument following that statement that she truly understands the verdict to be against the weight of the evidence. Rather, she seems to contend that, because the district court granted a directed verdict for GE regarding the Manager position, and bifurcated the trial, the jury was denied hearing "all of the evidence and its subtleties and interpretations." *Id.*

If Gafford's argument is in fact an against-the-weight-of-the-evidence argument, it fails. Upon a review of the record, the district court did not abuse its discretion in denying Gafford's motion for a new trial.

Furthermore, it was not improper to bifurcate the trial into liability and damages phases. The district court has broad discretion to bifurcate the liability and damages phases of a trial. *See* Fed.R.Civ.P.

42(b) ("The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue ... or issues...."). This court has held that separation of the issues of liability and damages may be an appropriate exercise of discretion under Rule 42(b). *Hines v. Joy Mfg. Co.,* 850 F.2d 1146, 1152 (6th Cir.1988). In the instant case, bifurcation was not an abuse of the district court's broad discretion since the issues of liability and damages were sufficiently unrelated and since bifurcating these issues served to improve judicial economy.

## IX

Gafford's remaining contentions are meritless.

**AFFIRMED.**

RYAN, Circuit Judge, concurring.

I concur in the result reached in my brother's opinion, and in most of the underlying analysis. I do not think, however, that it is necessary to address the burden of proof issue with respect to the district court's jurisdiction, as my brother has done in parts III–A and B of his opinion.

There is no question on this record that plaintiff's counsel conceded at the jurisdiction hearing in the district court that the amount in controversy was over $50,000:

[PLAINTIFF'S COUNSEL]: Judge, I wish, I wish I could accomodate [sic] you so that you could remand it. However, I can't now that we have the figures. I believe that that evidence, being of record before the court, completes the amount in controversy.

THE COURT: And what is the amount in controversy?

[PLAINTIFF'S COUNSEL]: Judge, I haven't calculated it at this point in time, but I think what the number is, the differences between the twenty-seven that Mrs. Gafford made as a maximum, and the fifty-six, if, if in fact we're looking at almost thirty difference in that point in time. And I can see where a jury might find at least two years, it looks like the amount in contro-

versy, since GE has provided us with that figure.

Moreover, at oral argument before this court, in response to a question asked by the presiding judge, plaintiff's counsel conceded that the amount in controversy exceeded $50,000.

I would hold for another day, in a case in which the requisite jurisdictional amount in a diversity of citizenship case remanded to a federal court is not conceded, a discussion and decision concerning the burden of proof on that issue.

That said, I concur in the judgment for affirmance.