47 F.3d 1169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Regina H. HINES, Plaintiff-Appellant,
v.
ELF ATOCHEM NORTH AMERICA, INC., Defendant-Appellee.
 No. 93-6060.
 United States Court of Appeals, Sixth Circuit.
 Jan. 12, 1995.
 
 Before: MERRITT, Chief Judge, and NELSON, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal arises from a diversity action filed by Regina Hines against her former employer, Elf Atochem North America, Inc., charging the company with wrongful termination by breach of an implied contract of employment.[1] The jury that heard the case found that there was an implied contract but that the company had not breached that contract and returned a verdict on favor of Elf Atochem. The plaintiff appeals, contending that (1) the district court abused its discretion in bifurcating the question of liability from that of damages, (2) the court erred on limiting the scope of the plaintiff's proof regarding the existence of an implied contract, (3) the court should have granted the plaintiff a new trial when it came to light after the trial ended that the jury's verdict was not unanimous, and (4) the court should have granted her motion for judgment as a matter of law, notwithstanding the verdict, because the proof showed overwhelmingly that she was wrongfully discharged. We find no reversible error and affirm.
 
 
 2
 Regina Hines was a plant nurse at Elf Atochem, where she had worked since 1977. Difficulties between Hines and her supervisors arose after a reorganization in 1988 that expanded Hines's duties. She claimed that the conflicts concerned orders by her supervisors, especially James Shemwell, not to file OSHA incident reports, to falsify OSHA records, and to provide them with access to confidential employee information. Her supervisors claimed that the problems were brought to a head when, on August 6, 1990, Hine's request to attend an occupational health seminar in Chicago at company expense was denied. They further characterized Hines as a resentful and disrespectful complainer, who believed she was underpaid and undervalued.
 
 
 3
 On the evening of August 6, Hines went to her physician, complaining that she was physically and mentally debilitated by depression and stress. He advised her to take a two-week sick leave, and she notified her supervisor that same night that she was doing so, without specifying the nature of her ailment. She returned to work on August 27, but refused to fill out a sickness and accident form accounting for her absence. A verbal altercation ensued. Hines left the plant and, after consulting again with her physician, decided to take an extended leave of absence. Although Hines did not communicate with her immediate supervisors about her failure to return to work, she did stay in contact with Dr. Ornella, the plant physician. According to him, she indicated in October that she had been released by her physician to return to work and asked him to arrange a meeting with her supervisors. As a result, a meeting was scheduled for October 15, 1990.
 
 
 4
 Hines arrived at the plant that day with a list of demands that were evidently presented as conditions for her return to work. (Although Hines later characterized the list as one of complaints drawn up at her supervisor's request, James Shemwell testified that the list was compiled by Hines on her own initiative. It is clearly phrased in terms of demands, seven in all, rather than complaints, i.e., "reasonable wage," "computer and typewriter in office," "treated with dignity and respect -- no more discrimination and harassment," etc.).
 
 
 5
 Three days later, on October 18, Shemwell sent Hines a letter noting that she had been released to return to work and that she had presented the list as "a necessary prerequisite for [her] return to work." The letter concluded:
 
 
 6
 We have considered your position. While several of the terms presented to us are not necessarily unreasonable, your position when considered in its entirety, is untenable. We are simply not willing to accept your return to work on the basis you have proposed.
 
 
 7
 Under the circumstances, we will consider your termination effective October 19, 1990, as a voluntary resignation. On October 22, Hines responded by letter, denying that she had been released to return to work, and stating that she did not intend to resign voluntarily.
 
 
 8
 At trial, Hines produced a notice entitled "Rules of Conduct," which had been posted at the plant since 1985 and which purported to apply to "all employees." The notice stated that the company had "a right to discharge suspend, or otherwise discipline for 'just cause"' and provided a non-exclusive list of misconduct that would subject an employee to disciplinary action. The district court restricted the plaintiff from calling a long list of Elf Atochem employees to testify about the company's enforcement of the company's Rules of Conduct.
 
 
 9
 The jury ultimately found that there was an implied contract of employment between the plaintiff and the company, based on the posted Rules of Conduct, but further found that the company had not breached the implied contract and returned a verdict in the company's favor.
 
 I.
 
 10
 The plaintiff's first contention on appeal is that the district court erred in deciding, on the first day of trial, to bifurcate the question of damages from the trial on liability. Counsel for the plaintiff objected, saying that he would be inconvenienced in the presentation of his case and might lose the testimony of some witnesses who would be unable to stay long enough to testify. However, at no time during the ensuing trial did counsel raise a specific objection to the exclusion of relevant evidence that would have been admitted on the question of liability but for the bifurcation order. Hence, there is no showing of actual prejudice in the record. The most we have is counsel's assertion that the issues of liability and damage were inextricably intertwined, a contention which does not appear to be supported by the record before us. Moreover, the plaintiff concedes that this court has recognized that a district could has broad discretion under Fed. R. Civ. P. 42(b) to order bifurcation. See Gafford v. General Electric Co., 997 F.2d 150, 172 (6th Cir. 1993). We find no abuse of discretion under the circumstances of this case.
 
 II.
 
 11
 The plaintiff next contends that the district court erred when it limited the scope of proof regarding her assertion that she had an implied contract of employment with the defendant. There is some reason to believe that the trial judge interpreted too narrowly a ruling on a motion in limine entered earlier by a different district judge, thereby limiting plaintiff's proof to the posted list of company Rules of Conduct. But because the plaintiff prevailed on the question of whether she was covered by an implied contract of employment, we conclude that any error in the limitation of proof was, at most, harmless.
 
 III.
 
 12
 Next, the plaintiff contends that she was denied a proper jury trial because, she insists, the jury was given confusing instructions by the district court and, as a result, failed to report a unanimous verdict. The defendant contends that the district court's action in responding to a question sent out by the jury during deliberation was not erroneous and that the plaintiff's complaint is nothing more than an attempt to impeach the verdict.
 
 
 13
 Before retiring to deliberate, the jury was given the following jury interrogatory form:
 
 
 14
 1. Do you believe from the evidence that the Plaintiff had an implied contract of employment with the Defendant that she would be discharged only for "just cause"?
 
 Yes No
 
 15
 If your answer is yes, please answer question 2. If your answer is no, please answer question 3.
 
 
 16
 2. Do you believe from the evidence that the Defendant breached this contract of employment with the Plaintiff and discharged her for no "just cause"
 
 Yes No
 
 17
 Now, please answer question 3.
 
 
 18
 3. Regardless of whether or not the Plaintiff had an implied "just cause" contract, or whether she was an at-will employee, do you believe from the evidence that the Plaintiff was discharged because she pursued her workers' compensation benefits under Kentucky law?
 
 Yes No
 
 19
 After deliberating for an hour and a half, the jury sent the following note to the district judge:
 
 
 20
 After we have answered the questions, we're not sure who we have decided in favor of. We feel the plaintiff presented the best case, but according to the way we answered the questions, it seems we are finding for the defendants. Are we right?
 
 
 21
 We voted unanimously, 1. Yes; 2. No; 3. No.
 
 
 22
 Following a discussion with counsel, the judge declined to bring the jury back into the courtroom and instead returned the jury's question with the following written response: "Yes, and please complete the appropriate verdict form." Shortly thereafter, the jury returned a unanimous verdict for the defendant, signed by each of the jurors, as follows: "We, the Jury, find on behalf of the defendant, Elf Atochem North America, Inc., and against the Plaintiff, Regina H. Hines." In addition, all six jurors were polled in open court concerning their responses on the interrogatory form, as well as their concurrence in the verdict form. Again, the verdict was clearly unanimous in the defendant's favor.
 
 
 23
 Nevertheless, the plaintiff sought to set aside the verdict a week later, arguing that it was not unanimous based on an affidavit submitted by one of the jurors, Ruth Heady, in which she said that the answers to questions 2 and 3 on the interrogatory actually should have been "yes," rather than "no," and that it was the jury's intention to vote in favor of the plaintiff, not against her. Heady attributed the jury's confusion to the note returned by the district judge in response to the jury's request for clarification during deliberation, saying, "I felt that the Judge was telling us we had to find for the Defendant ...."
 
 
 24
 The district court properly denied the plaintiff's motion to set aside the verdict, finding that the issue was controlled by Rule 606(b) of the Federal Rules of Evidence, which provides that "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberation or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror's mental processes therewith." The plaintiff contends that Juror Heady's affidavit is nevertheless admissible in the context of this case, on two grounds. She argues, first, that it qualifies under the exception in Rule 606(b) permitting testimony by a juror "on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." The plaintiff argues that the district court's note, because it was confusing to the jury, was just such an "outside influence." Second, the appellant insists that Juror Heady's affidavit was admissible to demonstrate that the announced verdict was not the verdict agreed upon by the jurors due to inadvertence, oversight, or mistake, another recognized exception to the general prohibition against impeachment of a jury verdict contained in Rule 606(b).
 
 
 25
 The district judge rejected both arguments and determined that the note sent to the jury was not in any way confusing. We agree. Although the district court's response to the jury note might have been fuller, the response was sufficient to address the jury's question, and it was not incorrect in any sense. Moreover, despite the jury's feeling that the plaintiff had presented the "better case," it is abundantly clear that they decided the legal questions raised at trial in the defendant's favor and that the verdict, at least at the time it was returned, was unanimous. There was no error in the district court's decision under Rule 606(b).
 
 IV.
 
 26
 Finally, the plaintiff insists that the district court should have granted her motion for judgment as a matter of law, based on overwhelming evidence that the company had breached its implied contract of employment with her. Given the record summarized above, we find no basis on which to reverse the district court's decision to permit the jury verdict to stand.
 
 
 27
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The complaint originally contained counts charging retaliatory discharge and outrageous conduct in addition to breach of implied contract, but those claims were disposed of by motion before and after trial and are not before us on appeal