Traci **PARRIS**, on behalf of herself and all other persons similarly situated, Plaintiff–Appellee,

v.

**MEGO MORTGAGE CORPORATION;** City Mortgage Services, Inc., Defendants–Appellants.

No. 99–6295.

United States Court of Appeals, Sixth Circuit.

June 21, 2001.

Before JONES, SUHRHEINRICH, and DAUGHTRY, Circuit Judges.

PER CURIAM.

Pursuant to 28 U.S.C. § 1292(b), Defendants MEGO Mortgage Corporation (MEGO) and City Mortgage Services, Inc. (CMS) (collectively "Defendants") appeal an interlocutory order of the district court denying their motion to dismiss on grounds that Plaintiff Traci Parris had not alleged an amount in controversy exceeding $75,000 in this state law usury action. Defendants assert the court erred by including in its calculation of the amount in controversy unincurred and unaccrued interest charges that might accumulate over the life of a loan that contained a prepayment privilege. We AFFIRM.

## I.

On August 5, 1997, Plaintiff closed on a 15–year, $35,000 second home mortgage loan, which was used to refinance consumer debt. The interest rate is 16.750%. The note provides that "[i]nterest will be charged on unpaid principal until the full amount of principal has been paid." The note also permits Plaintiff to make full or partial prepayment, but that the note holder may charge her for the privilege. Closing costs, consisting of a loan origination fee, a loan discount, a credit report charge, a document preparation fee, a flood certification fee, a Federal Express fee, an abstract/title search fee, recording fees, and tax stamps, totaled $3,516.45. Mortgage Lenders Association, Inc. (MLA) was the lender. The loan was later sold to MEGO, and then again to CMS.

The Truth–In–Lending Disclosure Statement (TIL Disclosure) given to Plaintiff at closing indicates that the total finance charges will cost $63,992.80, that the amount of credit provided was $31,850 .00, and that the total of all payments made as scheduled will be $95,842.80.

On October 2, 1998, Plaintiff filed a complaint on behalf of herself and all others similarly situated[1] against MLA, MEGO, and CMS alleging diversity jurisdiction and that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests [sic] and costs." She asserted a usury claim under Tenn.Code Ann. § 47–14–102 *et seq.* (1995), based on the loan she obtained from MLA, and sought compensatory damages, punitive damages, pre-judgment interest, costs, litigation expenses and attorney fees. She also requested, among other relief, a declaration that the loan agreements are null and void and that she and the other class members do not owe Defendants anything regarding the loan agreements.

MEGO moved to dismiss for lack of subject matter jurisdiction, arguing that Plaintiff and class members could not meet the amount in controversy requirement. MLA later joined in this motion, as did CMS. The district court denied the motion. MEGO then moved for reconsideration of the court's order, or alternatively, requested the court to certify an interlocutory appeal. Again, MLA and CMS joined in the motion. The district court denied the motion to reconsider its previous order denying MEGO's motion to dismiss for want of jurisdiction, but granted its motion to certify for interlocutory appeal. In denying MEGO's motion, the district court held that it was appropriate to include both interest charged and interest contracted to be charged in the amount in controversy calculation because Plaintiff sought to have the loan declared void. The court used the finance charges from

---

1.  A class has not been certified.

the TIL Disclosure, and added the closing costs, statutory penalty and potential statutory attorney's fees to find that the jurisdictional amount was met.

All three defendants then sought to appeal. This Court dismissed MLA's petition as untimely, but granted the petition as to MEGO and CMS.

## II.

Defendants argue that Plaintiff's damages are the difference between interest she has paid thus far and the lawful amount that should have been charged. They speculate that Plaintiff could prepay, refinance the debt, or default so that she is never obligated to pay the entire amount of finance charges that she would owe if she paid off the principal in the standard monthly payments for the life of the loan. They also assert the court could not use the TIL Disclosure to determine interest for purposes of calculating the amount in controversy because it is mere speculation in light of the fact that Plaintiff has never paid this amount of future interest and Defendants are not yet entitled to it. They further assert that the principal cannot be considered as part of the amount in controversy because, under Tennessee law, the original lender may bring suit to recover the principal actually advanced and the lawful interest owed to it. In Defendants' view, Plaintiff's damages could not surpass $22,000 even with a generous allowance for attorney's fees.

■ Subject matter jurisdiction is a question of law we review *de novo*, but we review a district court's findings of jurisdictional facts for clear error. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir.1993).

■ In diversity cases, a district court has jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Gafford*, 997 F.2d at 156 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938)) (emphasis removed). To dismiss on jurisdictional grounds, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (emphasis removed). The amount in controversy is measured at the time the complaint was filed. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir.1990). Whether the jurisdictional amount has been met is considered in light of the state law and its recognition of the relief sought. *See id.* at 341 (citing *Sellers v. O'Connell*, 701 F.2d 575 (6th Cir.1983)) ("a court will find absence of jurisdictional amount to a legal certainty when state law bars recovery of the type of damages claimed").

Under Tenn.Code Ann. § 47–14–117(a) "[a]ny contract which on its face requires the payment of usury or excess loan charges, commitment fees, or brokerage commissions shall not be enforceable; but the original lender or creditor may sue to recover the principal actually advanced, plus lawful interest, loan charges, commitment fees, and brokerage commissions."

■ Under the plain language of the statute, a contract usurious on its face will not be enforceable. *Id.* The contract between the parties includes both the principal and the interest rate at which the principal must be repaid. Although theoretically Plaintiff could prepay all or a portion of the principal so as to avoid the entire amount of interest that would otherwise accrue over the life of the loan, prepayment is at her election, not at Defendants' election. In short, the jurisdictional

amount is met in this case even without consideration of potential statutory damages or attorney's fees under § 47–17–117(c) because the amount contracted for is $35,000 and the interest payable over the terms of the agreement exceeds $60,000.[2] 28 U.S.C. § 1332(a).

■ Here, there has not been a counterclaim for recovery of the principal or lawful interest. Nevertheless, that a counterclaim for the principal and lawful interest might still be filed would not deprive the district court of jurisdiction. *Red Cab*, 303 U.S. at 289–90, 58 S.Ct. 586 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). Thus, Defendants' arguments that a counterclaim by the lender should be considered when calculating the amount in controversy is meritless.

### III.

For the foregoing reasons, we AFFIRM.

---

**2.** The TIL Disclosure cannot govern the calculation of interest for purposes of determining the amount in controversy because the amount it discloses as total finance charges contains more than the interest payable over the life of the loan pursuant to the terms of the note. 12 C.F.R. § 226.4 (2001) (defining "finance charge" that is to be disclosed in a TIL Disclosure Statement). It also includes some, but not all, of what has already been included in the amount in controversy calculation as closing costs. *Id.* (defining "finance charge" as including such items as loan fees, but excluding such items as abstract fees). Instead, the terms of the note govern calculation of the amount of interest.