**CENTURY BUSINESS SERVICES, INC. and SR Business Services, Inc., Plaintiffs–Appellants,**

v.

**Kenneth W. BRYANT, Defendant–Appellee.**

No. 01–4142.

United States Court of Appeals, Sixth Circuit.

July 8, 2003.

Before DAUGHTREY and GIBBONS, Circuit Judges; and MILLS, District Judge.*

**OPINION**

GIBBONS, Circuit Judge.

Plaintiffs-appellants Century Business Services, Inc. (Century), a Delaware corporation with its principal place of busi-

* The Honorable Richard H. Mills, United States District Judge for the Central District of Illinois, sitting by designation.

ness in Ohio, and SR Business Services, Inc. (SRB), an Ohio corporation whose principal place of business is in dispute, brought an action against defendant-appellee Kenneth W. Bryant, a Georgia resident, to enforce (1) an employment agreement restricting Bryant's competition with Century and SRB and prohibiting Bryant from soliciting employees of Century and SRB and disclosing confidential information belonging to Century and SRB; (2) a merger agreement containing a non-interference clause prohibiting Bryant from soliciting employees of Century and SRB or disclosing confidential information; and (3) a stock option agreement containing a non-interference clause prohibiting Bryant from soliciting employees and restricting Bryant's competition with Century and SRB. Century and SRB also alleged that Bryant intentionally interfered with their contractual relationships and misappropriated their trade secrets. Bryant moved the district court to dismiss the action for lack of personal and subject matter jurisdiction. The basis for the motion with respect to subject matter jurisdiction was Bryant's contention that SR Accounting was a necessary and indispensable party to the action. A day later Bryant supplemented the motion, arguing that there was no diversity of citizenship because SRB's principal place of business was in Georgia.

The district court found that SRB had its principal place of business in Ohio, such that the parties were diverse and it could exercise subject matter jurisdiction. The district court also found, however, that SR Accounting (a Georgia corporation) was a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure. Because the joinder of SR Accounting would destroy diversity jurisdiction, the court granted Bryant's initial motion to dismiss for lack of subject matter jurisdiction. The court declined to

address whether personal jurisdiction could be exercised over Bryant.

We reverse the judgment of the district court as to Bryant's initial motion to dismiss for lack of subject matter jurisdiction, since SR Accounting is not a necessary party under Rule 19(a). We also reverse the district court's denial of Bryant's supplemental motion to dismiss for lack of subject matter jurisdiction and remand for an evidentiary hearing in light of the subsequent contrary decision of the United States District Court for the Northern District of Georgia, which found, in a suit between SRB and Bryant, that SRB's principal place of business is located in Georgia.

## I.

Century is a publicly traded company that provides a range of customized business services. Century is the parent corporation of CBSI Management Co., which in turn is the parent corporation of SRB. SRB offers accounting and business services.

In December 1997, Century (then known as International Alliance Services) purchased Smith & Radigan, P.C. (Smith & Radigan), a certified public accounting firm. At the time of the purchase. Bryant, a certified public accountant in the state of Georgia, was a shareholder of Smith & Radigan. As part of the sale, Century, SRB, Smith & Radigan, and the shareholders of Smith & Radigan (including Bryant) entered into the Agreement and Plan of Merger dated December 4, 1997 (Merger Agreement). According to the terms of the Merger Agreement, Bryant and the other shareholders of Smith & Radigan were to form a new certified public accounting firm called SR Accounting. Section 7.8 of the Merger Agreement states:

*Conversion to Business Corporation.* Immediately prior to the Closing: (I) [Smith & Radigan] and the Shareholders will cause [Smith & Radigan] to be converted from a professional corporation to a business corporation and (ii) *the Shareholders will create a separate corporation organized under Georgia law which will be named 'Smith & Radigan, Certified Public Accountants, L.L.C."* *("SR Accounting"*) and transfer to SR Accounting: (A) certain assets, liabilities, and operations of SR relating to attest functions; and (B) all other assets of SR in excess of the Target Closing Date Net Worth. [Smith & Radigan] and the shareholders shall submit to IASI for its prior approval, the organizational documents for SR Accounting.

(emphasis added). On the same date, the newly-created SR Accounting entered into an Administrative Services Agreement with SRB, whereby SR Accounting "would conduct a public accounting business comprised of performing audit, review and compilation services and rendering 'attest services' ... to clients" and SRB would "provide[ ] certain administrative, personnel, marketing and other support services to [SR Accounting]." The Administrative Services Agreement further specified that "[a]ll personnel used in rendering the Services shall be employed by and compensated by [SRB]." Under the terms of this agreement, labor on attest services to SRB's clients "would be provided to [SR Accounting] from [SRB], using its employees including Bryant."

Bryant agreed to non-solicitation and confidentiality obligations as part of the Merger Agreement. Section 7.7 of the Merger Agreement states:

*Non-interference.* Each of the Shareholders, severally, agrees that he will not at any time without the prior written consent of IASI, either directly or indirectly (I) solicit (or attempt to solicit), induce (or attempt to induce), cause or facilitate any employee, director, agent, consultant, independent contractor, representative or associate of IASI or IASI subsidiaries and affiliates (collectively, the IASI Group) to terminate or change his, her, or its employment or services to, or relationship with the IASI Group, or ... (iii) will not (except as required by law or as authorized in writing by IASI) directly or indirectly copy, disseminate, or use for the Shareholder's personal benefit or for the benefit of any third party, any information or knowledge belonging to, used by, or which is in the possession of the IASI Group relating to the IASI Group's business, business plans, strategies, pricing, sales practices, customers or prospective customers, technology, programs, finances, costs, employees, employee compensation rates or policies, marketing plans, development plans, computer programs, computer systems, inventions, developments, trade secrets, know how or confidences of the IASI Group or its businesses, without regard to whether any such information may be deemed confidential or material to any third party.

Bryant and SRB also entered into the Executive Employment Agreement dated December 4, 1997, wherein Bryant agreed to additional non-solicitation and non-disclosure obligations, as well as a non-competition obligation. Section 6 of the Executive Employment Agreement states:

*Noncompetition.* The Executive agrees that during the period in which the Executive is employed by the Company and for two years thereafter the Executive shall not, without the prior written consent of the IASI Representative and the Company, either directly or indirectly, solicit, attempt to solicit, take away, attempt to take away, or otherwise inter-

fere with the Company's and IASI's relationship with any customer (including any customer in the Company's or IASI's data base) or Qualified Prospective Customer of the Company, or otherwise compete with the Company or IASI with respect to any customer or Qualified Prospective Customer.

\*　　\*　　\*　　\*　　\*　　\*

During the term of this Agreement and for a period of two years thereafter the Executive will not, without the IASI Representative's and the Company's prior written consent, directly or indirectly engage in, make any investment in or have any interest in any business in competition with the business of the Company or IASI; and the Executive will not advise, assist or render services, or refer customers, either directly or indirectly, to any person, firm, company, corporation or business (other than the company or IASI) with reference to any business in competition with the business engaged in by the Company or IASI during the Executive's employment by the Company....

In addition, on January 4, 1999, Bryant and Century entered into the Employee Stock Option Agreement, wherein Bryant agreed to the following restrictions:

During the two-year period following Employment ... an Optionee will not solicit on behalf of any party other than the Century Group, for Products of the Employing Entity, from any of its Customers, nor cause or seek to cause any its of Customers to cease engaging in business with the Employing Entity.

During his or her employment, and for a period of two years thereafter, an Optionee will not solicit any employee or representative of the Century Group for the purpose of inducing them to leave the Century Group's employ or cease to be its representative.

On August 22, 2001, Bryant resigned from his employment with SRB. Century and SRB claim that, since resigning, Bryant has "solicited [Century and SRB's] clients to move their business from [Century and SRB] to his new entity." Century and SRB also claim that Bryant has solicited an "employee, Christine Allen, to leave [plaintiffs-appellants'] employ and go to work for him in his new entity."

On September 12, 2001, Century and SRB filed a complaint against Bryant. On September 18, 2001, Bryant filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the district court lacked subject matter jurisdiction because SR Accounting was a necessary and indispensable party pursuant to Rule 19 of the Federal Rules of Civil Procedure. Also, on September 18, 2001, Bryant filed a motion to dismiss for lack of personal jurisdiction.

The following day, Bryant filed a supplemental motion to dismiss for lack of subject matter jurisdiction, arguing that diversity jurisdiction did not exist because the complaint stated that SRB's principal place of business was in Georgia. On September 21, 2001. Century and SRB filed an Amended Verified Complaint, which alleged that SRB's principal place of business was in Ohio, rather than Georgia. Three days later, Bryant filed another supplemental motion to dismiss for lack of subject matter jurisdiction, arguing that SRB's principal place of business actually was in Georgia, notwithstanding Century and SRB's claims to the contrary.

On September 25, 2001, the district court entered an order denying Bryant's supplemental motion to dismiss for lack of subject matter jurisdiction, finding SRB's principal place of business to be Ohio. The district court granted Bryant's initial motion to dismiss for lack of subject matter

jurisdiction, however, finding SR Accounting to be a necessary and indispensable party pursuant to Rule 19 of the Federal Rules of Civil Procedure. The district court held that since SR Accounting is a Georgia citizen, its inclusion as a defendant would destroy diversity, thereby divesting the court of subject matter jurisdiction. The district court denied Bryant's motion to dismiss for lack of personal jurisdiction as moot.

On October 23, 2001, Century and SRB filed their Notice of Appeal. On June 6, 2003, the United States District Court for the Northern District of Georgia found, in a separate suit between SRB and Bryant (*Bryant v. SR Business Services, Inc.*, No. 1:01–CV–2786–JOF (N.D. Ga. June 6, 2002)), that SRB's principal place of business is in Georgia.

## II.

A district court's finding under Rule 19(a) that a party is necessary to an action is reviewed for abuse of discretion. *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1346 (6th Cir.1993). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an incorrect legal standard, or applies the law incorrectly." *United Food & Commercial Workers' Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir.1998). This court will find an abuse of discretion only upon a "definite and firm conviction that the trial court committed a clear error of judgment." *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir.1998).

Rule 19(a) of the Federal Rules of Civil Procedure provides, in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

Applying this rule, the district court concluded that "SR Accounting is a party to the employment contracts at issue and thus has an interest in the subject matter of the action." Specifically, the district court stated that "SR Accounting is party to, *inter alia*, the Agreement and Plan of Merger by and Among International Alliance Services, Inc., Smith & Radigan, P.C. ("SR"). SR Business Service, Inc., and the Shareholders of SR (Merger Agreement), upon which [Century and SRB] base[ ] claims against Bryant."

█ The district court's finding that SR Accounting was a party to the Merger Agreement is clearly erroneous. The first paragraph of the Merger Agreement states:

This Agreement and Plan of Merger (the "Agreement") is made and entered into as of this 4th day of December, 1997, by and among International Alliance Services, Inc. (IASI), a Delaware Corporation, SR Business Services, Inc., an Ohio corporation ("Merger Sub"), Smith & Radigan, P.C., a Georgia professional corporation ("SR"), and the shareholders of SR listed on Exhibit A hereto (collectively, the "Shareholders").

SR Accounting is not listed. Nor is SR Accounting a signatory to the agreement. The district court's erroneous conclusion that SR Accounting was a party to the Merger Agreement appears to have arisen from a misunderstanding of the relationship between Smith & Radigan and SR Accounting. In its opinion, the district court specifically noted, "Following the merger, Smith & Radigan became Smith & Radigan, Certified Public Accountants, L.L.C. (SR Accounting)." Section 1.1 of the Merger Agreement, however, indicates that Smith & Radigan was merged into SRB following the merger:

> *The Merger.* Subject to the terms and conditions of this Agreement and in accordance with the Ohio General Corporation Law (the "OGCL"), at the Effective Time (as defined in Article 2 hereof) [Smith & Radigan] will be merged with and into [SRB] and the separate existence of [Smith & Radigan] will cease and [SRB] will continue as the surviving corporation (the "Surviving Corporation").

In addition, Section 7.8 of the Merger Agreement explains that SR Accounting was a separate corporation, created by the individual shareholders of Smith & Radigan:

> Immediately prior to the Closing: (I) [Smith & Radigan] and the Shareholders will cause [Smith & Radigan] to be converted from a professional corporation to a business corporation and (ii) *the Shareholders will create a separate corporation organized under Georgia law which will be named "Smith & Radigan, Certified Public Accountants, L.L.C."* ("SR Accounting") and transfer to SR Accounting: (A) certain assets, liabilities, and operations of [Smith & Radigan] relating to attest functions; and (B) all other assets of [Smith & Radigan] in excess of the Target Closing Date Net Worth. [Smith & Radigan] and the Shareholders shall submit to IASI for its prior approval, the organizational documents for SR Accounting.

(emphasis added). Consequently, although Smith & Radigan is a party to the Merger Agreement, SR Accounting is not.[1]

Bryant concedes that "a non-party to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract." Bryant argues, however, that where "a contractual provision [is] executed solely for the benefit of another party, the other party is necessary pursuant to Civil Rule 19(a)." Bryant implies that the contractual provisions at issue were intended to benefit SR Accounting alone. This assertion finds no support in the record. To the contrary, SR Accounting has not even "claimed an interest relating to the subject matter of the action," as required by Rule 19(a)(2). A party is not "necessary" where it has not claimed an interest in the outcome of an action and complete relief can be ordered in its absence. *Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.,* 968 F.2d 1463, 1472 (1st Cir.1992).

Here, complete relief can be afforded to the parties because Century and SRB seek to enforce contractual provisions concerning Bryant's obligations to them and do not seek to enforce any obligations that

---

1. SR Accounting also is not a party to the Executive Employment Agreement or the Employee Stock Option Agreement. Both the first paragraph and the signature page of the Executive Employment Agreement indicate that the only parties to that agreement are SRB and Bryant. Similarly, the first sentence of the Employee Stock Option Agreement lists the parties as Century and Bryant. Indeed, appellee never asserts that SR Accounting was a party to any of the agreements.

Bryant may have to SR Accounting.[2] The contractual provisions alleged to have been violated by Bryant concern obligations owed to Century and SRB. For example, the non-interference obligation contained in the Merger Agreement forbids the solicitation of "any employee, director, agent, consultant, independent contractor, representative or associate of [Century] or [Century's] subsidiaries and affiliates" by Bryant, while the non-competition obligation contained in the Executive Employment Agreement prohibits Bryant from soliciting or interfering with SRB's and Century's "relationship with any customer … or Qualified Prospective Customer of [SRB], or otherwise compet[ing] with [SRB] or [Century] with respect to any customer or Qualified Prospective Customer." The district court can examine the contracts at issue, determine the rights of Century and SRB as they relate to Bryant, and provide complete relief to the parties without joining SR Accounting.

## III.

■ The district court denied Bryant's supplemental motion to dismiss for lack of subject matter jurisdiction, finding SRB's principal place of business to be in Ohio. Bryant now challenges the district court's conclusions, arguing that "for purposes of federal diversity jurisdiction, Georgia is the State of citizenship of SRB."[3] Bryant also relies upon a June 6, 2002 decision of the United States District Court for the Northern District of Georgia, which found, in a suit between SRB and Bryant, that SRB's principal place of business was Georgia and remanded the case to the state court in Georgia for lack of subject matter jurisdiction. *See Bryant v. SR Business Services, Inc.,* No. 1:01–CV–2786–JOF (N.D. Ga. June 6, 2003).[4]

2. There is no evidence in the record that Bryant has any independent obligations to SR Accounting. Bryant himself argues that "SR Accounting has no agreement of any kind with Bryant which restricts Bryant, after resigning from SR Accounting, from continuing to perform CPA services for the clients of SR Accounting." Additionally, although the district court assumed that SR Accounting was Bryant's employer, the Executive Employment Agreement indicates that Bryant actually was employed by SRB. Bryant's services to SR Accounting thus were undertaken in his capacity as an employee of SRB, which (as explained in the Administrative Services Agreement) had arranged to provide "professional personnel with the background and experience to assist [SR Accounting] in staffing engagements with [SR Accounting's] clients, including certified public accountants ('CPAs')."

3. Bryant's failure to file a cross-appeal with regard to the district court's denial of his motion to dismiss for lack of subject matter jurisdiction does not deprive this court of jurisdiction to hear this appeal. "Unlike other issues not involving the merits of a case, subject-matter jurisdiction may be raised at any time, by any party or even *sua sponte* by the court itself." *Franzel v. Kerr Mfg. Co.,* 959 F.2d 628, 630 (6th Cir.1992).

4. In *Bryant,* the Northern District of Georgia concluded, after examining affidavits offered by the parties, that "the chief activity of [SRB] occurs in Georgia" and that "control of [SRB's] day-to-day management operations, activities, and business decisions … transpired in Georgia." *Bryant* at 13–14. Notwithstanding Bryant's assertions to the contrary, the determination of the Northern District of Georgia as to SRB's principal place of business does not have preclusive effect. According to 28 U.S.C. § 1447(d), "[a]n order remanding a case to the State court from which it was reviewed is not reviewable on appeal or otherwise." This court also has explained that 28 U.S.C. § 1447(d) "bars review of remand orders to state courts when the order falls into either category of remand order described in § 1447(c) … lack of subject matter jurisdiction or defects in removal procedure." *Jagers v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 43 Fed. Appx. 920, 921, No. 02–3512, 2002 WL 1869414, at 921 (6th Cir.2002) (quotation omitted). Where a party lacks the ability to appeal, preclusion is not proper. In *Health Cost Controls of Ill.,*

"The question of a corporation's principal place of business is essentially one of fact, to be determined on a case-by-case basis, taking into account such factors as the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations." *Gafford v. General Elec. Co.*, 997 F.2d 150, 161 (6th Cir.1993) (quotation omitted). Since determination of a corporation's principal place of business is a question of fact, it is subject to the clearly erroneous standard of review. *Id.* "A factual finding is clearly erroneous when, though there is evidence to support that finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Ables*, 167 F.3d 1021, 1035 (6th Cir.1999) (quotation omitted). If a district court's account of the evidence is plausible in light of the record viewed in its entirety, however, this court may not reverse even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state where it was incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). "A multi-state corporation therefore is invested with dual citizenshipit must be treated as a citizen both of its state of incorporation and of the state of its principal place of business." *Franzel*, 959 F.2d at 629 (quotation omitted). However, a corporation can have only one principal place of business for purposes of establishing its state of citizenship. *Gafford*, 997 F.2d at 161. Several methods for determining a corporation's principal place of business exist. The "nerve center" test emphasizes the situs of corporate decision-making authority and overall control, while the "corporate activities/place of activity" test emphasizes the location of production activities or service activities. *Id.* at 162. This court has suggested that the "total activity" test, combining both of the foregoing inquiries, is more appropriate, since the "approach to determining a corporation's principal place of business will vary with the facts of each case." *Id.*

In this case, the district court did not conduct an evidentiary hearing. Instead, both parties offered affidavits concerning the question of subject matter jurisdiction. As the district court observed, "[o]n certain points, the two affidavits state irreconcilable positions." In an affidavit dated September 21, 2001, Michael Gleespen, the corporate secretary of SRB, stated that SRB is both incorporated in and has its principal place of business in Ohio. Gleespen further asserts that the headquarters, national marketing, and internal accounting offices of SRB are located in Ohio, as with all Century subsidiaries. Gleespen claims that "[f]our of the six corporate officers of [SRB] are located in, and perform their duties" in Ohio. All bills of SRB are paid from Ohio. Finally. Gleespen states that "[t]he regional and national

*Inc. v. Washington*, 187 F.3d 703, 708–09 (7th Cir.1999), the Seventh Circuit noted that "[a]n *unappealable* ruling ... is not *res judicata* ... and the district court's remand order was unappealable because the ground was lack of subject matter jurisdiction.... So the order doesn't conclude the issue whether the district court had jurisdiction over [the] new and materially identical suit." *See also Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 392 (5th Cir.1998) ("It is clear that fairness considerations weigh heavily against binding a party whose ability to appeal is precluded by a prohibition of law. Indeed, the Restatement itself specifically provides for an exception to preclusion when '[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action.'") (quoting Restatement (Second) of Judgments § 28(1)).

management over the operations of [SRB] is not located in Georgia."

In Bryant's affidavit, however, he asserts that "all paid employees of [SRB] live in Georgia, have their office[s] in Georgia, and pay Georgia state income tax." Bryant adds that "all invoices for work done by [SRB] are prepared and issued from Georgia." While Bryant claims that "[a]ll revenue received by [SRB][is] attributable to the efforts of employees who have their sole business office in Georgia," Gleespen responds that "[l]ess than ten percent (10%) of the labor on the attest arrangements performed by [SRB] for the HUD Clients that are the subject of the dispute in this matter is performed in the state of Georgia."

As previously noted, the district court chose to decide the issue of subject matter jurisdiction solely on the basis of written materials, rather than conducting an evidentiary hearing. We recognize that "[a]s there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir.1980) (quoting *Gibbs v. Buck,* 307 U.S. 66, 71–72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939)). We also note that "if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution, it may conduct an evidentiary hearing." *Id.* at 439. Here, in view of the "irreconcilable positions" stated by the affidavits, disputed issues of fact exist with regard to the jurisdictional issue. These fact issues and the subsequent contrary decision of the Northern District of Georgia, while not binding in this case, demonstrate the need for an evidentiary hearing. Consequently, we reverse the district court's denial of Bryant's supplemental motion to dismiss for lack of subject matter jurisdiction and remand to the district court with instructions to conduct an evidentiary hearing.

## IV.

For the foregoing reasons, we reverse the judgment of the district court as to Bryant's initial motion to dismiss for lack of subject matter jurisdiction, since SR Accounting is not a necessary party under Rule 19(a). We also reverse the district court's denial of Bryant's supplemental motion to dismiss for lack of subject matter jurisdiction and remand to the district court for an evidentiary hearing.